UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 1/24/23

———————————————————————x

NESPRESSO USA, INC.,

      Plaintiff,

   -against-                         22-cv-02209 (CM)

PEET'S COFFEE, INC.,

      Defendant.

———————————————————————x

## DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

      Plaintiff Nespresso USA, Inc. brings this ten-count action against defendant, Peet's Coffee, Inc., alleging federal claims for trademark and trade dress infringement; trademark and trade dress dilution; unfair competition, false endorsement, false association and false designation of origin; as well as New York state law claims for dilution of trademark and trade dress; and unfair competition.

      Defendant has filed a motion to dismiss the complaint in part pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to strike certain pleadings, pursuant to 12(f). For the following reasons, Defendant's motion is GRANTED in part and DENIED in part. Counts I, V, VI, IX and X are dismissed, the motion is otherwise denied.

## BACKGROUND

### I.  The Parties

Plaintiff Nespresso USA, Inc. ("Plaintiff" or "Nespresso") is a prominent and well-recognized producer of single-serve coffee/espresso products sold under the NESPRESSO brand. (Complaint, Dkt. No. 1 ("Compl.") ¶ 15). For over three decades, Nespresso and its affiliate, Nestlé Nespresso SA, have been selling NESPRESSO-brand coffee and espresso machines, coffee/espresso capsules that are compatible with its machines, consumables and accessories throughout the world (collectively the "NESPRESSO Products"). (*Id.* ¶ 16).

Defendant Peet's Coffee, Inc. ("Defendant" or "Peet's") is a coffee retailer. In or about July 2018, Peet's launched a new high-value product line of coffee/espresso capsules, which is the subject of this action. (*Id.* ¶¶ 4, 60).

### II.  Factual Background

#### 1.  The Trade Dress

One of the NESPRESSO Products is the Original NESPRESSO capsule (the "NESPRESSO Capsule"). (Compl. ¶ 17). Plaintiff purports to have a protectable trade dress – the Original NESPRESSO Capsule Trade Dress (the "Trade Dress") – on the NESPRESSO Capsule. (*Id.*) It has inserted pictures of the NESPRESSO Capsule showing the Trade Dress within the Complaint. (*Id.*)

Plaintiff asserts that the Trade Dress consists of the combination of four distinct elements (i) a frustoconical top portion (a cone with the tip removed), transitioning abruptly to a more vertical side wall that connects to the flange of the capsule; (ii) an opaque color; (iii) a circular bottom that is wider in diameter than the top of the capsule; and (iv) an inverted frustoconical indentation at the top. (*Id.* ¶ 17-18). Plaintiff alleges that the Trade Dress is "arbitrary", "unique", and "aesthetic." (*Id.* ¶ 21). It further alleges that the Trade Dress is not functional, as evidenced by

2

"the presence of numerous different third-party capsule designs that are available for sale in the United States market and that work with NESPRESSO-branded machines (among other things)." (*Id.* ¶ 21).

Pursuant to a written sub-license agreement from Nestlé Nespresso SA, Plaintiff has the exclusive right in and to (including to license third parties to use) the Trade Dress in the United States to advertise, market, promote, offer for sale, and sell NESPRESSO Products. (*Id.* ¶ 22).

Plaintiff alleges that, for over three decades, Plaintiff and Nestlé Nespresso SA have engaged in advertising, marketing, and promotional efforts for the NESPRESSO Capsule, which prominently feature the Trade Dress. (*Id.* ¶¶ 24-25). Plaintiff alleges that, due to the extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of the NESPRESSO Capsule featuring the Trade Dress, the Trade Dress has become widely recognized and famous among consumers in the United States. (*Id.* ¶ 30).

2.  The NESPRESSO Marks

Société des Produits Nestlé S.A. ("SPN") owns three United States trademark registrations for the NESPRESSO word (the "word marks") and three trademark registrations for the NESPRESSO design, **NESPRESSO** (the "design marks," and together with the word marks, the "NESPRESSO Marks"). (Compl. ¶¶ 31-36).

Nestlé Nespresso SA is the exclusive licensee of the NESPRESSO Marks. (*Id.* ¶ 37). Pursuant to a written sub-license agreement from Nestlé Nespresso SA, Plaintiff Nespresso USA, Inc. has the exclusive right in and to (including to license third parties to use) the NESPRESSO Marks in the United States to advertise, market, promote, offer for sale, and sell NESPRESSO Products. (*Id.* ¶ 38).

3

Plaintiff alleges that, as with the Trade Dress, Plaintiff and Nestlé Nespresso SA have engaged in advertising, marketing, and promotional efforts for the NESPRESSO Products, which prominently feature the NESPRESSO Marks for over three decades. (*Id.* ¶¶ 40-41). Plaintiff alleges that, due to this extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of the NESPRESSO Products featuring the NESPRESSO Marks, the NESPRESSO Marks have become widely recognized and famous among consumers in the United States. (*Id.* ¶ 44).

3. Defendant's Alleged Infringement

Plaintiff alleges that, in July 2018, Defendant launched a new line of coffee/espresso capsules ("Defendant's Capsule"). (Compl. ¶ 60). Plaintiff claims that Defendant's Capsule infringes the Trade Dress by copying each element of the Trade Dress and by arranging each element in the same combination as the Trade Dress. (*Id.* ¶¶ 52-55). As a result, Plaintiff alleges that the trade dress used for Defendant's Capsule renders it nearly identical and confusingly similar to the NESPRESSO Capsule. (*Id.* ¶ 56).

Plaintiff also alleges that Defendant used the NESPRESSO Marks to advertise, market, promote, offer for sale, and sell Defendant's Capsule. (*Id.* ¶ 59). For example, Plaintiff alleges that to promote its new product line, Defendant's website stated that Defendant's coffee is "now in capsules designed to fit your NESPRESSO® OriginalLine*." (*Id.*) Plaintiff alleges that, in making this statement, Defendant (i) failed to display non-affiliation disclaimers that were prominent and proximate to Peet's references to NESPRESSO – instead, placing a small, inconspicuous disclaimer at the bottom of its website because it knew that consumers were unlikely to see and/or read it when placed in that location; (ii) used the registered ® symbol in connection with the use of NESPRESSO, falsely suggesting an affiliation or association with Nespresso; and (iii) used

NESPRESSO as both a noun (instead of an adjective that modifies a noun) and a tagline to convey compatibility with Defendant's Capsule. (*Id.* ¶¶ 61-64).

Beyond the statement itself, Plaintiff also asserts that Defendant promoted its capsules in retail stores in ways that unfairly traded off Nespresso's goodwill and constituted unfair competition. (*Id.* ¶ 65). For example, Defendant displayed its capsules alongside and/or in close proximity to Nespresso's machines and genuine Nespresso product displays. (*Id.*) As a result of all of these actions, Plaintiff claims that Defendant gave consumers the false impression that Defendant's Capsule is affiliated with, endorsed by, sponsored by, or licensed by Nespresso. (*Id.* ¶ 64).

### 4.  Continued Alleged Infringement

On October 19, 2018, counsel for Nespresso issued a demand letter to Defendant, notifying Defendant of the infringement issues it had identified and demanding that Defendant cease and desist improper use of the NESPRESSO Marks and the Trade Dress. (Compl. ¶ 66). Defendant denied that its actions infringed the NESPRESSO Marks or the Trade Dress. (*Id.* ¶ 67).

Plaintiff alleges that despite its diligent efforts and numerous attempts to resolve this matter over the course of years, Defendant has continued its deliberate and improper use of the NESPRESSO Marks and the Trade Dress. (*Id.* ¶ 68). For example, Plaintiff claims that Defendant's website continues to utilize the NESPRESSO Marks and places a disclaimer in small, inconspicuous wording at the bottom of its website. (*Id.* ¶¶ 69-70). It further alleges that Defendant's Capsule packaging continues to include descriptive references to NESPRESSO and the NESPRESSO Marks, but does not include prominent and proximate disclaimers – instead, the disclaimer is on the back of the packaging only. (*Id.* ¶ 71).

Plaintiff claims that Defendant's actions are causing actual confusion in the marketplace. (*Id.* ¶ 72). Within its Complaint, Plaintiff included screenshots of consumer reviews of the Defendant's coffee/espresso products on Defendant's website, which Plaintiff alleges demonstrate that consumers have mistakenly believed that Defendant's Capsule has an affiliation, connection, and/or association with and/or to the NESPRESSO Capsule. (*Id.*) Examples of statements that Plaintiff alleges indicate consumer confusion are: "We are so thankful that Peets paired up with Nespresso to create pods for coffee"; "the Peet's nespresso pods are the best"; and "I've been using Peet's Nespresso pods for about 6 months and I love them!" (*Id.*) Plaintiff alleges that Defendant replied to such consumer comments without taking any action to dispel consumer confusion. (*Id.* ¶ 76).

## III.    Procedural Posture

On March 17, 2022, Plaintiff filed its complaint in this action. (Dkt. No. 1.) The ten-count Complaint alleges violations of the Lanham Act arising from Defendant's infringement of the NESPRESSO Marks and the Trade Dress (Counts I and II); unfair competition, false endorsement, false association, and false designation of origin for use of the NESPRESSO Marks and use of the Trade Dress (Counts III and IV); and dilution of the NESPRESSO Marks and the Trade Dress (Counts V and VI); as well as New York common law unfair competition and passing off for use of the NESPRESSO Marks and Trade Dress (Counts VII and VIII); and dilution of the NESPRESSO Marks and Trade Dress under New York Business Law (Counts IX and X).

Plaintiff seeks a preliminary and permanent injunction, an accounting, disgorgement of Defendant's profits, and an award of Plaintiff's damages, attorneys' fees, and costs. (Compl. ¶ 82, at 71-73).

Before the court is Defendant's motion to dismiss nine counts in their entirety (Counts I, II, and IV-X), and to dismiss part of Count III. (Dkt. No. 24.)

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A]ll reasonable inferences should be drawn in favor of the plaintiff," but the "complaint must contain sufficient allegations to nudge a claim 'across the line from conceivable to plausible.'" *Sphere Digital, LLC v. Armstrong*, No. 20-cv-4313 (CM), 2020 WL 6064156, at *4 (S.D.N.Y. Oct. 14, 2020) (quoting *Twombly*, 550 U.S. at 555). Where a plaintiff fails to "nudge[] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. Rule 12(b)(6) "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the truth of the allegations. *Id.* at 545.

## DISCUSSION

### I. Factual Matter To Be Considered

"In determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated into the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). The Court may take judicial notice of court filings and other matters of public record, including newspaper articles and media interviews, without converting a motion to dismiss into a motion for summary judgment. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); Fed. R. Evid. 201(c)(2).

Defendant asks that the court take notice of 15 exhibits that consist of (i) 11 official United States Patent and Trademark Office ("USPTO") records and filings and (ii) 4 excerpts of complaints in cases filed in this district. (Dkt. No. 27).

It is well established that "[t]he Court may properly take judicial notice of official records of the United States Patent and Trademark Office." *MidCap Bus. Credit, LLC v. MidCap Fin. Tr.*, No. 21 Civ. 7922, 2022 WL 684756, at *1 n.2 (S.D.N.Y. Mar. 8, 2022) (quoting *Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n.3 (S.D.N.Y. 2010)); *see also*, *Bytemark, Inc. v. Xerox Corp.*, No. 17 Civ. 1803, 2022 WL 94859, at *1 n.2 (S.D.N.Y. Jan. 10. 2022); *Sage Dining Servs., Inc. v. Ash Rest. Grp., Inc.*, No. 17-CV-09738 (NSR), 2019 WL 2074596, at *1 (S.D.N.Y. May 10, 2019).

With respect to the excerpts of complaints, "A court may take judicial notice of a document filed in another court not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (quoting *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998)); *see also In re Dynagas LNG Partners LP Secs. Litig.*, 504 F. Supp. 3d 289, 312 n.3 (S.D.N.Y. 2020).

Defendant wants the court to take judicial notice of the excerpts from these so that the court can compare the definition of Trade Dress in the Complaint in this case with the definition of that term in other proceedings. (Dkt. No 27 at 4 n.2). That being the case, the request to have the court take judicial notice is denied. Public records may not on a motion to dismiss "provide the reasoned basis for the court's conclusion." *Glob. Network Commc'ns*, 458 F.3d at 157. "A complaint that alleges facts related to or gathered during a separate litigation does not open the door to consideration, on a motion to dismiss, of any and all documents filed in connection with that

litigation. . . . A contrary rule would permit the improper transformation of the Rule 12(b)(6) inquiry into a summary-judgment proceeding – one featuring a bespoke factual record, tailor-made to suit the needs of defendants." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 560 (2d Cir. 2016)

So while I can take judicial notice of the fact that Nespresso USA, Inc. has sued three other companies for infringement of the Trade Dress,[1] I cannot and will not take judicial notice of the facts alleged in the excerpts of the complaints selected by Peet's. (*See* Dkt. No. 27 at 2).

## I.   The Motion to Dismiss Counts I, V, VI, IX, and X For Lack of Standing is Granted

Defendant asserts that Counts I, V, VI, IX, and X should be dismissed because Plaintiff lacks standing to bring the claims.

### 1.   Plaintiff Lacks Standing To Bring Its Trademark Infringement Claim (Count I)

Defendant first argues that Plaintiff lacks standing to bring its claim for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114(1) (Count I), because Plaintiff is not the "registrant" of the NESPRESSO Marks. (Dkt. No. 25 at 10).

Section 1114(1) permits claims for registered trademark infringement to be brought by the "registrant" of the relevant trademarks. *Fed. Treasury Enter. Sojuzplodoimport v. SPI Spirits Ltd.*, 726 F.3d 62, 72 (2d Cir. 2013). The term "registrant" is defined to include the registrant's "legal representatives, predecessors, successors and assigns." 15 U.S.C. § 1127.

Plaintiff asserts that it is an "assign" of the NESPRESSO Marks, because it has received an exclusive license to use the NESPRESSO Marks in the United States, which is equivalent to an assignment of the marks. (Dkt. No. 34 at 4).

"Exclusive licensees to a trademark are deemed assignees under § 1114 in limited circumstances." *L'Oreal USA, Inc. v. Trend Beauty Corp.*, No. 11 CIV. 4187 RA, 2013 WL

---

[1]     Two excerpts of complaints are from the same action – one is from the original complaint and the other is from the amended complaint. (*See* Dkt. No. 27 at 2).

4400532, at *9 (S.D.N.Y. Aug. 15, 2013). "Congress could easily have included 'licensee' or 'exclusive licensee' among the terms . . . that define a 'registrant.' It chose instead to limit standing to parties having a more specific set of interests in the registered mark. A plaintiff therefore must show that its 'license' amounts, in fact, to an assignment." *SPI Spirits. Ltd.*, 726 F.3d at 78. In order to demonstrate that there has been an assignment under the Lanham Act, a party must show: "(1) the relevant assigning document [was] effected by [an] instrument in writing duly executed" and (2) "the assignment transfer[ed] an ownership interest in the marks at issue." *Id.* at 73 (internal quotations omitted).

Courts in this circuit generally look "to the terms of the license agreement to determine whether the licensee held a property interest in the mark, becoming effectively an assignee for standing purposes." *Telebrands Corp.*, 719 F. Supp. 2d at 293. However, a plaintiff is "not required to attach to the Complaint a copy of its license agreement . . . to plausibly allege its trademark infringement claim." *N. Food I/E, Inc. v. Apollo Food Int'l Inc.*, No. 19-CV-574 (MKB), 2020 WL 9607108, at *8 (E.D.N.Y. Aug. 14, 2020). As Plaintiff has not attached the relevant license agreements in this case, the court turns to the allegations in the Complaint.

First, Plaintiff has plausibly alleged that its rights derive from a written instrument. The Complaint states that, "Nestlé Nespresso SA is the exclusive licensee of the NESPRESSO Marks" and "Pursuant to a written sub-license agreement from Nestlé Nespresso SA, Plaintiff Nespresso USA, Inc. has the exclusive right in and to, including to license third parties to use, the NESPRESSO Marks in the United States." (Compl. ¶¶ 37-38).

However, the Complaint does not include facts that are sufficient to show that the agreements between (i) SPN and Nestlé Nespresso SA; and (ii) Nestlé Nespresso SA and Plaintiff

amount to more than exclusive licenses and in fact are transfers of ownership akin to an assignment.

At the outset, nowhere in the Complaint does Plaintiff expressly allege that it is an assign or that ownership interest in the NESPRESSO Marks has been transferred. Instead, the Complaint alleges that SPN "owns" the registrations for the NESPRESSO Marks. (Compl. ¶ 31; *see also* Pl. Ex. 1, at 2). Courts in this Circuit "have long held – and persuasively reasoned – that a party is not an "assign" for standing purposes under the Lanham Act unless that party owns the mark at issue. *SPI Spirits Ltd.*, 726 F.3d at 75. A license agreement that grants the licensee the right to use the trademark but states that the licensor remains the owner is not equivalent to an assignment. *See MPC Franchise, LLC v. Tarntino*, 19 F. Supp. 3d 456, 475 (W.D.N.Y. 2014), aff'd, 826 F.3d 653 (2d Cir. 2016); *Brooklyn Bottling of Milton, N.Y., Inc. v. Ecuabeverage Corp.*, No. 07-CV-8483, 2008 WL 577288, at *2 (S.D.N.Y. Mar. 3, 2008). Thus, the Complaint's assertion that SPN is the owner of the NESPRESSO Marks cuts against Plaintiff's argument that ownership has been transferred to it.

Next, the allegations in the Complaint that Plaintiff "has the exclusive right in and to, including to license third parties to use, the NESPRESSO Marks in the United States to advertise, market, promote, offer for sale, and sell NESPRESSO Products," (*id.* ¶ 38), and "for over three decades" has engaged in such "advertising, marketing, and promotional efforts [that] prominently feature the NESPRESSO Marks," (*id.* ¶ 40), merely indicate that Plaintiff has rights that are typical of those granted to an exclusive licensee. These allegations, without more, do not indicate that there has been the equivalent of a transfer of ownership interest. "Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark

under § 1114." *Calvin Klein Jeanswear Co. v. Tunnel Trading,* No. 98 Civ. 5408, 2001 WL 1456577, at *4 (S.D.N.Y. Nov. 16, 2001).

The Complaint does allege that Plaintiff has "the exclusive right to police the marketplace in the United States and enforce . . . the NESPRESSO Marks." "In determining ownership interest, courts in the Second Circuit have examined whether the license agreement grants the licensee the right to sue for infringement." *Telebrands Corp.*, 719 F. Supp. 2d at 293; *see also N. Food I/E, Inc.*, 2020 WL 9607108, at *7. However, courts in this Circuit have consistently found that an assignment must be a transfer of *all* ownership rights. *Prince of Peace Enters., Inc. v. Top Quality Food Market, LLC*, 760 F.Supp.2d 384, 391 (S.D.N.Y.2011); *Silverstar Enters., Inc. v. Aday, 537 F.Supp. 236,* 239 (S.D.N.Y.1982); *see also* 3 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 18:1 (4th ed.2012) ("An assignment "is an outright sale of all rights in that mark.") The Second Circuit in *SPI Spirits Ltd.*, 726 F.3d at 77 explicitly stated that the plaintiff had "not cited any persuasive authority within or outside our Circuit holding that a valid assignment of a trademark right can occur when the putative assignor retains the right . . . to exclude others from using the mark. We decline to create such a rule here." *Id.* at 77.

While Plaintiff alleges in its Complaint that its enforcement rights are exclusive, Defendant points to numerous USPTO oppositions and cancellations brought by SPN as the purported owner of the NESPRESSO Marks. (Dkt. No. 25 at 11; Dkt. No. 26, Exs. 3-9). As noted, the court may take judicial notice of the fact that these filings were made. They indicate that SPN in fact retained a right to exclude others from using the NESPRESSO Marks.

As the Complaint does not plead facts indicating that the exclusive license agreements for the NESPRESSO Marks were the equivalent of assignment agreements in which "all substantial rights" in the marks were transferred, as the Complaint specifically alleges that SPN continues to

be the "owner" of the marks, and as USPTO filings suggest that in fact SPN retains rights to enforce the NESPRESSO Marks, Plaintiff has not plausibly alleged that it has standing to bring its Section 32 claim. *Telebrands Corp.*, 719 F. Supp. 2d at 290.

### 2. Plaintiff Lacks Standing To Bring Its New York Dilution Claim

For the same reason, Plaintiff lacks standing to bring its dilution claims under N.Y. Gen. Bus. Law § 360–l (Counts IX and X).

"Only the federal 'registrant' or legal assignee has standing to sue under Section 32(1) of the Lanham Act ... or for dilution under Section 360–l of the New York General Business Law." *Prince of Peace Enter., Inc. v. Top Quality Food Market, LLC*, No. 07–CV–0349, 2007 WL 704171, at *3 (S.D.N.Y.2007); *see also In re Houbigant Inc.*, 914 F.Supp. 964, 990 (S.D.N.Y.1995) (holding that an exclusive licensee that had no other trademark rights did not have standing to bring an action under N.Y. Gen. Bus. Law § 360–l [then § 368–d] against the trademark owner). "The standing inquiry for § 360–l is thus similar to that for Section 32(1) of the Lanham Act." *Krasnyi Oktyabr, Inc. v. Trilini Imports*, 578 F. Supp. 2d 455, 471 (E.D.N.Y. 2008).

Unless Plaintiff can demonstrate that the exclusive license agreements for the NESPRESSO Marks were in fact assignment agreements, it likewise does not have standing to assert its New York dilution claims.

### 3. Plaintiff Lacks Standing To Bring Its Federal Dilution Claims

Finally, Defendant asserts that Plaintiff lacks standing to bring its dilution claims for the NESPRESSO Marks or Trade Dress under Section 43(c) of the Lanham Act (Counts V and VI) because such claims may only be brought by the owner of a famous mark.

Section 43(c) claims may only be brought be the "owner of a famous mark." *Prince of Peace*, 760 F.Supp.2d at 392-93 (quoting § 1125(c)(1)). The majority of courts in this circuit have held that, "Absent a valid assignment transferring all ownership rights in a mark, even an exclusive

licensee and distributor . . . is not a mark's 'owner' for purposes of Section 43(c)" *L'Oreal USA, Inc.*, 2013 WL 4400532, at *13 (quoting *Prince of Peace*, 760 F. Supp. 2d at 394); *see also Iconix Brand Grp., Inc. v. Bongo Apparel, Inc.*, No. 06 Civ. 8195(DLC), 2008 WL 2695090, at *5 (S.D.N.Y. July 8, 2008).

The Complaint does not allege that Plaintiff is the owner of either the NESPRESSO Marks or Trade Dress. Nor does it allege that there is a valid assignment transferring all ownership rights in the marks from SPN to Nespresso. Instead, Plaintiff relies on its exclusive sub-licenses, which it argues amounts to an assignment of ownership rights in order to assert standing. (Compl. ¶¶ 22, 37-38). However, case law does not support that argument for claims brought under Section 43(c) claims. This is true even if the license amounts to an assignment for purposes of a Section 32 claim – which, as I have already held – the license here pleaded does not.

## II. The Motion To Dismiss Counts II, IV, VI, VIII, and X is Denied

Defendant argues that Plaintiff's five trade dress claims must be dismissed because Plaintiff has not carried it burden to establish that the Trade Dress is protectable under federal or New York Law. But Plaintiff has no burden to "establish" anything at the pleading stage – and Nespresso has plausibly alleged that it has a protectable trade dress in its distinctive capsules.

"In all significant aspects, trade dress protection is coextensive under New York state law and federal law." *Caliko, SA v. Finn & Emma, LLC*, No. 21-CV-3849 (VEC), 2022 WL 596072, at *9 (S.D.N.Y. Feb. 28, 2022); *see also Heller Inc. v. Design Within Reach, Inc.*, No. 09-CV-1909, 2009 WL 2486054, at *5 (S.D.N.Y. Aug. 14, 2009) (citing N.Y. Gen. Bus. Law § 360–l; *Cartier, Inc. v. Four Star Jewelry Creations, Inc.*, 348 F. Supp. 217, 250–51 (S.D.N.Y. 2004)).

"[T]rade dress today encompasses a broad concept of how a product presented to the public looks, including its color, design, container, and all the elements that make up its total appearance." *Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1001 (2d Cir. 1997). In the Second

Circuit, a product design trade dress infringement claim consists of four elements. *See Sherwood 48 Assoc. v. Sony Corp. of America*, 76 Fed. Appx. 389, 391 (2d Cir. 2003).

First, "A plaintiff must [] offer 'a precise expression of the character and scope of the claimed trade dress.'" *Urban Grp. Exercise Consultants, Ltd. v. Dick's Sporting Goods, Inc.*, No. No. 12 Civ. 3599, 2012 WL 3240442, at *3 (S.D.N.Y. Aug. 7, 2012) (quoting *Sherwood*, 76 Fed. Appx. at 391).

Next, "the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C § 1125(c)(4). A purported trade dress might be functional in a purely utilitarian sense, or it might be recognized to have some aesthetic functionality. *Int'l Leisure Prod., Inc. v. Sunnylife Australia*, No. 16-CV-6215 (NSR), 2018 WL 1305712, at *4 (S.D.N.Y. Mar. 12, 2018). In cases involving the aesthetic features of a product, trade dress is functional "if the right to use it exclusively would put competitors at a significant non-reputation-related disadvantage." *DO Denim, LLC v. Fried Denim, Inc.*, 634 F.Supp.2d 403, 408 (S.D.N.Y. 2009) (citing *Yurman*, 262 F.3d at 116).

The final two elements are that a plaintiff show its trade dress has acquired secondary meaning, and that the defendant's "allegedly infringing feature . . . is likely to cause confusion with the product for which protection is sought." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). The former requirement has been interpreted by the Supreme Court to mean that a plaintiff must show that its trade dress is distinctive. *Id.*

A product can be either inherently distinctive or acquire distinctiveness by developing a secondary meaning in the marketplace, which occurs when, "'in the minds of the public, the primary significance of a product feature [] is to identify the source of the product rather than the product itself.'" *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n. 11

(1982). "An unregistered product's design trade dress cannot be inherently distinctive, and thus that 'product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.'" *Metrokane, Inc. v. The Wine Enthusiast*, 160 F. Supp. 2d 633, 637 (S.D.N.Y. 2001).

A plaintiff seeking protection over its product design trade dress must show not only secondary meaning, but also that the defendant's product is so similar that it is likely to cause confusion about the product's actual source. *See* 15 U.S.C. § 1125(a)(1)(A); *Samara Bros.*, 529 U.S. at 210; *Metrokane*, 160 F. Supp. 2d at 639.

Of course, at the motion to dismiss stage, the Plaintiff need prove nothing. Rather, it must allege sufficient facts to make plausible its claim that each of the four elements can be satisfied. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Defendant argues that Plaintiff has not sufficiently pleaded (1) the precise character and scope of its trade dress; (2) that the trade dress is non-functional; (3) that the trade dress has secondary meaning. (Dkt. No. 25 at 12). In each instance Peet's is incorrect.

1. Plaintiff Has Adequately Articulated Its Purported Trade Dress

"[A] Plaintiff must articulate the elements of their [sic] product design with specificity to be afforded trade dress protection." *Urban Grp.*, 2012 WL 3240442, at *4 (internal quotation and citation omitted). "A plaintiff's inability to explain to a court exactly which aspects of its product design[] merit[s] protection may indicate that its claim is pitched at an improper level of generality, i.e., the claimant seeks protection for an unprotectable style, theme or idea." *Landscape Forms*, 113 F.3d at 381.

To plead a claim of trade dress infringement, a claimant must "specify both 'which features are distinctive' and 'how they are distinctive.'" *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (citing *Heller Inc.*, 2009 WL 2486054, at *6).

Defendant argues that, while the Complaint defines the Trade Dress via an "itemized list of four distinct elements," it lacks any allegations about how or why any of those elements are distinctive. (Dkt. No. 25 at 13). This, with respect, is nonsense.

The Complaint describes the Trade Dress as the "overall commercial impression created by the unique combination of the four distinct elements" consisting of "(i) a frustoconical top portion (a cone with the tip removed), transitioning abruptly to a more vertical side wall that connects to the flange of the capsule; (ii) an opaque color; (iii) a circular bottom that is wider in diameter than the top of the capsule; and (iv) an inverted frustoconical indentation at the top." (Compl. ¶¶ 18-19). Plaintiff includes in the Complaint a number of photographs to demonstrate both (i) how the combination of the four elements create the Trade Dress (*id.* ¶ 6) and (ii) how the Trade Dress "maintains a consistent overall look and feel" throughout Nespresso's line of NESPRESSO Capsule products. (*Id.* ¶ 20).

Plaintiff also alleges that the trade dress is distinctive by noting that the NESPRESSO Capsule is "unique and iconic" and that, "while certain third parties sell capsules that are compatible with NESPRESSO Products, these third-party capsules vary in shape and design, and feature trade dresses that create different overall commercial impressions from Plaintiff's Original NESPRESSO Capsule Trade Dress." (*Id.* ¶ 20).

At the pleading stage this is sufficient to satisfy the first element of a trade dress claim. In fact, the court (which has seen quite a few trade dress cases) has seldom seen a better crafted pleading.

The cases that Defendant cites in support of its argument are distinguishable from this one.

In *Caraway Home, Inc. v. Pattern Brands, Inc.*, No. 20 Civ. 10469, 2021 WL 1226156, at *8 (S.D.N.Y. Apr. 1, 2021), Plaintiff described the trade dress of its frying pan as having a "deep

bowl-shape with high sidewalls" but did not include any facts suggesting that other cookware did not share its design elements. As a result, the court determined that "there is no information in the Complaint from which the Court can conclude that such design elements are not present in other cookware."

Likewise, in *Sara Designs, Inc. v. A Classic Time Watch Co.*, 234 F. Supp. 3d 548, 555 (S.D.N.Y. 2017), the court dismissed a complaint when the plaintiff failed to "articulate the precise nature of the trade dress Plaintiff purport[ed] to claim, and merely contain[ed] a high level description of features of several watches . . . without allegations as to whether and how those features are distinctive."

Here, Plaintiff's assertions that other third-party capsules differ from the NESPRESSO Capsule stands in contrast to these cases.

Defendant also cites *Landscape Forms*, 113 F.3d 373, in which the plaintiff on appeal alleged that its trade dress was composed of "site furniture which is at once massive, yet appears to float." The court vacated the preliminary injunction because it found that this description of plaintiff's trade dress was "too abstract to qualify as trade dress." *Id.* at 382. The court noted that "the focus on the overall look of a product does not permit a plaintiff to dispense with the articulation of the specific elements" because "[w]ithout such a precise expression of the character and scope of the claimed trade dress, litigation will be difficult as courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market." *Landscape Forms*, 113 F.3d at 381.

In contrast to *Landscape Forms*, Plaintiff has in detail articulated the four specific elements that combine to create the unique overall commercial impression of its Trade Dress. The *Landscape Forms* court specifically stated that "we still recognize that there is no question that

trade dress may protect the "overall look" of a product" and that "although each element of a trade dress individually might not be inherently distinctive, . . . the combination of elements may be indicative of source." *Landscape Forms*, 113 F.3d at 381.

### 2. Plaintiff Has Sufficiently Alleged That Its Trade Dress is Nonfunctional

Defendant next argues that the Complaint does not include allegations from which the court could plausibly draw an inference that the Trade Dress is non-functional. (Dkt. No. 25 at 13-15). "In a civil action for trade dress infringement . . . the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional." 15 U.S.C. 1125(a)(3). Trade dress may be functional in a traditional sense ("utilitarian functionality"), or it may be aesthetically functional. *Christian Louboutin S.A. v. Yves Saint Laurent*, 696 F.3d 206, 219 (2d Cir. 2012).

Because functionality is a question of fact, *Eliya, Inc. v. Kohl's Dep't Stores*, No. 06 Civ 195 (GEL), 2006 WL 2645196, at *4 (S.D.N.Y. Sept. 13, 2006), it is premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage. *See Axis Imex, Inc. v. Sunset Bay Rattan, Inc.,* No. C 08-3931 RS, 2009 WL 55178, at *3 (N.D. Cal. Jan. 7, 2009). The question is whether facts are alleged that render the conclusory allegation plausible. The answer is yes, they are.

#### a. Plaintiff Has Sufficiently Pleaded Traditional Nonfunctionality

A trade dress is functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of the article." *Inwood*, 456 U.S. at 850, n. 10; *Christian Louboutin*, 696 F.3d at 21; *Int'l Leisure*, 2018 WL 1305712. "A design feature of a particular article is 'essential' only if the feature is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough." *LeSportsac, Inc. v. K mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985).

Plaintiff alleges that the Trade Dress is non-functional through pleading that there are numerous different third-party capsule designs that are available for sale in the United States and that work with NESPRESSO-branded machines, and that these third-party capsules vary in shape and design and feature trade dresses that create different overall commercial impressions from the Trade Dress of a Nespresso original capsule. (Compl. ¶ 21). Whether this is true or not remains to be seen, but that is not an issue to be decided on a motion to dismiss. Plaintiff has adequately alleged that its design feature is not dictated by the functions to be performed. As it is "the absence of alternative constructions performing the same function that renders the feature functional," Plaintiff has sufficiently alleged that its Trade Dress is traditionally non-functional. *Brandir Int'l, Inc. v. Cascade Pac. Lumber Co.*, 834 F.2d 1142, 1148 (2d Cir. 1987); *see also Cartier, Inc. v. Sardell Jewelry, Inc.*, 294 F. App'x 615, 621 (2d Cir. 2008).

Defendant asserts that the existence of alternative designs alone is insufficient to show non-functionality as it does not indicate whether the design of a trade dress affects the cost or quality of the product. (Dkt. No. 25 at 15). However, every case cited by Defendant as support was a summary judgment case, not a motion to dismiss case, in which the bare allegations of the complaint are no longer presumed true but must be supported by admissible evidence. *See, e.g., TrafFix Devices, Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23, 32-33 (2001); *Sulzer Mixpac AG v. A&N Trading Co.*, 988 F.3d 174, 180 (2d Cir. 2021). "A finding of whether a trade dress is functional is 'essentially a fact question.'" *Int'l Leisure*, 2018 WL 1305712, at *6 (quoting *Kohl's*, 2006 WL 2645196, at *4). While Plaintiff may ultimately not meet its statutory burden of proof, for purposes of this 12(b)(6) motion to dismiss, it is enough for Plaintiff to allege that (1) its Trade Dress is "arbitrary, unique, aesthetic" and (2) there are other third-party capsule designs on the market in the U.S., that vary in shape and design from its own but are compatible with its signature

machine. Those two allegations suggest (though admittedly they do not prove) the design of the trade dress does not impact the cost or quality of the capsules. Plaintiff thus adequately pleads that its Trade Dress is not essential to the use or purpose of the NESPRESSO Capsule.

### b.   Plaintiff Has Sufficiently Pleaded Aesthetic Nonfunctionality

"If the trade dress is not functional under the traditional *Inwood* test, and Plaintiff asserts that the elements of [its] trade dress are ornamental or aesthetic, the aesthetic functionality doctrine requires the additional fact-intensive inquiry recognized in *Qualitex*[] and *TrafFix*, namely 'if exclusive use of the feature would put competitors at a significant non-reputation-related disadvantage.'" *Int'l Leisure*, 2018 WL 1305712, at *4. *See also Christian Louboutin*, 696 F.3d at 219-20; *DO Denim*, 634 F. Supp. 2d at 408; *Yurman*, 262 F.3d at 116. An aesthetic feature cannot be protected under the Lanham Act if exclusive use would "significantly hinder competition by limiting the range of adequate alternative designs." *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995) (citing *Wallace Int'l Silversmiths, Inc. v. Godinger Silver Art Co., Inc.*, 916 F.2d 76, 81 (2d Cir.1990)); *Maharishi*, 292 F. Supp. 2d at 543.

As discussed above in relation to traditional nonfunctionality, Plaintiff pleads that its trade dress is "arbitrary, unique, aesthetic" and that "numerous different third-party capsules designs that are available for sale in the United States and that work with NESPRESSO-branded machines." (Compl. ¶ 21). In response, Defendant argues that Plaintiff only alleges in a conclusory fashion that its alleged trade dress is aesthetic, and this does not meet the pleading standard. (Dkt. No. 25 at 15).

However, as Plaintiff alleges that third party capsule designs exist that do not plagiarize each of the distinctive elements of the Trade Dress, it has plausibly alleged that granting Nespresso an exclusive right to use the Trade Dress will not put competitors at a significant non-reputation-

related disadvantage. A more fact-intensive inquiry is better suited for determination on a motion for summary judgment.

### 3.   Plaintiff Has Sufficiently Pleaded Secondary Meaning

"An unregistered product's design trade dress cannot be inherently distinctive, and thus that 'product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.'" *Metrokane*, 160 F. Supp. 2d at 637. An unregistered trademark has developed secondary meaning when, "in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood*, 456 U.S. at 851, n. 11; *Yurman.*, 262 F.3d at 115; *DO Denim*, 634 F. Supp. 2d at 407.

The Second Circuit has laid out several non-exclusive factors to consider, including "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use." *Metrokane*, 160 F. Supp. 2d at 639 (internal quotation omitted). However, "None of these elements is determinative and not every one of them must be proved to make a showing of secondary meaning." *Landscape Forms*, 117 F. Supp. 2d 360, 366 (S.D.N.Y. 2000).

"'Because the primary element of secondary meaning is 'a mental association in buyer[s'] minds between the alleged mark and a single source of the product,' the determination whether a mark or dress has acquired secondary meaning is primarily an empirical inquiry.'" *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 638 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017). A finding of secondary meaning "entails "vigorous evidentiary requirements." *U-Neek*, 147 F. Supp. 2d at 172. Accordingly, the test for secondary meaning raises factual questions that ordinarily may

not be decided on a motion to dismiss. *See A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 212 (S.D.N.Y. 2015) (collecting cases).

The Complaint states that, "For over three decades, Nespresso and its affiliate, Nestlé Nespresso SA, have invested (and continue investing) hundreds of millions of dollars on advertising, marketing, and promoting the Original NESPRESSO Capsule throughout the world," including through "Internet advertisements, stand-alone Nespresso retail stores in most major United States cities, prominent product displays within such high-end stores . . . , leading brick-and-mortar retailers . . . , as well as shopping malls, national television ads that feature celebrity endorsements, and a partnership with a famous third-party coffee brand." (Compl. ¶ 24). The Complaint further states that such "advertising, marketing, and promotional efforts prominently feature the Trade Dress." (*Id.* ¶ 25).

With respect to the "Sales Success" factor of secondary meaning, the Complaint states that "billions of dollars' worth of the NESPRESSO Capsule featuring the Trade Dress have been sold worldwide, and hundreds of millions of dollars' worth have been sold in the United States." (*Id.* ¶ 27). While the "Sales Success" factor "alone cannot provide dispositive proof that consumers actually made [an] association, . . . . The amount of sales may be indicative of whether or not a substantial portion of the purchasing public associates the trade dress with the source of the goods." *Ergotron, Inc. v. Hergo Ergonomic Support Sys., Inc.*, No. 94 CIV. 2732, 1996 WL 143903, at *8 (S.D.N.Y. Mar. 29, 1996).

In addition, the Complaint notes that "The Original NESPRESSO Capsule featuring the Trade Dress has been the subject of widespread, unsolicited media coverage for over three decades," including in publications such as *The New York Times*; *The Guardian*; *Time*; *Bloomberg*; *Business Insider*; *Mic*; *Environmental Leader*; and *Recycling Today*. (*Id.* ¶ 28).

Finally, the Complaint addresses attempts to plagiarize the Trade Dress by noting first that "Defendant's Infringing Capsule copies not only each element of the Trade Dress, but also arranges each element in the same combination as the Original NESPRESSO Trade Dress" (*id.* ¶ 55) and by stating that "in just the past four years, Plaintiff has sent over thirty cease-and-desist letters to third parties for infringing the Original NESPRESSO Trade Dress, and/or the NESPRESSO Marks." (*Id.* ¶ 47).

Defendant argues that these allegations are insufficient to plead secondary meaning because they are not tied to the Trade Dress in particular. (Dkt. No. 25 at 16). Defendant argues that the Complaint does not allege that the advertising dollars spent were specifically on the Trade Dress but instead only of the NESPRESSO Capsule. (Dkt. No. 25 at 16). Likewise, it argues that allegations of sales success of the NESPRESSO Capsule do not tie that success to the Trade Dress. (Dkt. No. 25 at 17) or that the allegations of unsolicited media coverage explain whether or how they are focused on the Trade Dress.

Defendant cites to *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 598 (E.D.N.Y. 2017) to support its argument that when a pleading is "silent" as to "the specifics of how [the product was] advertised" and "whether plaintiff's advertising stressed the elements of the trade dress" such allegations of advertising are insufficient to show secondary meaning. (Dkt. No. 25 at 17). However, here, unlike in *Bubble Genius*, the Complaint does set forth facts to indicate that Plaintiff's advertising included the elements of the Trade Dress. In addition to specifically stating that its "promotional efforts prominently feature the Trade Dress," (Compl. ¶ 25), Plaintiff also included in the Complaint images of promotional artwork comprised of the NESPRESSO Capsule featuring the Trade Dress, (*id.* ¶¶ 25-26) and the Complaint includes pictures of Nespresso's website, which displays the capsule outside of its packaging (*i.e.*, showing the Trade Dress).

(*Id.* ¶¶ 20). While Defendant alleges that the artwork "may not" depict the entire combination of four distinct elements making up the Trade Dress (Dkt. No. 25 at 16), that is an evidentiary question that is more appropriately reviewed on motion for summary judgment. At the motion to dismiss stage, Plaintiff has sufficiently plead the advertising element of the secondary meaning test.

Likewise, Defendant cites to *Jenny Yoo Collection, Inc. v. Watters Design Inc.*, No. 16-CV-2205 (VSB), 2017 WL 4997838, at *9 (S.D.N.Y. Oct. 20, 2017) to argue that secondary meaning has not been sufficiently pleaded here. In *Jenny Yoo*, the court held that allegations that a product became an "instant success" and received "praise from reviewers" were insufficient to find secondary meaning as there were no allegations that the "praise resulted from the alleged trade dress." *Id.* However, in that case, the complaint contained no allegations about advertising expenditures or allegations regarding prior attempts to plagiarize the trade dress. Moreover, the complaint merely stated that the products at issue had "strong sales." In contrast, here, Plaintiff has alleged substantial advertising expenditures, which – as noted above – feature the Trade Dress, billions of dollars of sales of the NESPRESSO Capsule featuring the Trade Dress worldwide and hundreds of millions of dollars in the United States, as well as allegations of plagiarizing of the Trade Dress supported by the fact that Plaintiff has sent thirty cease-and-desist letters to third parties in the past four years alone.

Taken together, Plaintiff's factual allegations adequately plead secondary meaning for the purposes of a motion to dismiss.

## III.    The Motion to Dismiss Counts I, III, V, VII, and IX is Denied

As noted above (*see supra* Section II.2.), SPN owns three United States trademark registrations for the NESPRESSO word (the "word marks") and three trademark registrations for

the NESPRESSO design, **NESPRESSO** (the "design marks," and together with the word marks, the "NESPRESSO Marks"). (Compl. ¶¶ 31-36).

Defendant argues that Plaintiff's counts I, III, V, VII, and IX purport to challenge uses of the NESPRESSO Marks generally but the Complaint does not in fact allege any instances in which Defendant used the design marks (*i.e.*, NESPRESSO with the stylized "N").

Plaintiff's Complaint alleges at various instances that Defendant deliberately and improperly used the NESPRESSO Marks – a defined term that is inclusive of both the word and design marks. (*See* Compl. ¶¶ 31). For example, Plaintiff states that Defendant "used the NESPRESSO Marks to advertise, market, promote, offer for sale, and sell" Defendant's Capsules (*id.* ¶ 59) and that despite changing its packaging in 2021, Defendant's "product packaging continues to use the famous NESPRESSO Marks." (*Id.* ¶ 71; *see also* ¶¶ 62, 66-68). Importantly, accompanying these statements, Plaintiff included in the Complaint pictures of Defendant's products and advertising, highlighting in red boxes where Plaintiff alleges the design marks specifically were used. (*See id.* ¶¶ 63, 69; *see also* Ex. 2, 3, 5, 6).

Plaintiff has adequately alleged that the design marks were used by Defendant.

## IV.   The Motion to Dismiss Counts V, VI, VII, VIII, IX, and X is Denied

Defendant asserts that Plaintiff's federal and New York dilution claims (Counts V, VI, IX, and X) and New York unfair competition claims (Count VII and VIII) are barred by the doctrine of laches.

Laches is an equitable defense that "is available to bar trademark-related claims where a plaintiff has unreasonably delayed in commencing an action to enforce its rights to the prejudice of the defendant." *Harley-Davidson, Inc. v. O'Connell*, 13 F. Supp. 2d 271, 279 (N.D.N.Y. 1998). To prove the laches defense, a party must show that "(1) the plaintiff knew that the defendant was

using its mark; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant would

suffer prejudice if the action were continued." *MidCap Bus. Credit*, 2022 WL 684756, at \*5.

"In general, the defense of laches is not raised in a motion to dismiss." *Fitzpatrick v.*

*SonyBMG Music Entertainment, Inc.*, 2007 WL 2398801, at \*3 (S.D.N.Y Aug. 15, 2007). But "in

certain circumstances, when the defense of laches is clear on the face of the complaint, and where

it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may

consider the defense on a motion to dismiss." *Id.* (quoting *Lennon v. Seaman*, 63 F. Supp. 2d 428,

439 (S.D.N.Y. 1999), *aff'd mem.*, 48 F. App'x 15 (2d Cir. 2002)).

"The continuing nature of trademark and trade dress torts has been widely recognized."

*R.C. Bigelow, Inc. v. Liberty Mut. Ins. Co.*, 287 F.3d 242, 248 (2d Cir. 2002). "Because trademark

infringement is a continuing wrong, 'a statute of limitations is no bar except as to damages beyond

the statutory period . . . Thus, 'it is almost always laches, not the statute of limitations, that is

invoked to determine the availability of both injunctive and monetary relief.' Without that defense,

'a plaintiff could delay filing suit indefinitely.'" *Vaad L'Hafotzas Sichos, Inc. v. Kehot Publ'n Soc.*,

935 F. Supp. 2d 595, 602 (E.D.N.Y. 2013) (quoting 6 McCarthy on Trademarks § 31:1); *see also*

*Bridgestone/Firestone Rsch., Inc. v. Auto. Club De L'Quest De La France*, 245 F.3d 1359, 1364

(Fed. Cir. 2001) ("[Defendant] argues that laches can not apply . . . because [Defendant's]

trademark use . . is a "continuing wrong" for which every use is a new injury. However . . . the

theory of "continuing wrong" does not shelter the [Defendant] from the defense of laches.")

"Although laches is an equitable defense, employed instead of a statutory time-bar,

analogous statutes of limitation remain an important determinant in the application of a laches

defense." *Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd.*, No. 06-3508, 2007 WL

2914452, at \*1 (2d Cir. Oct. 5, 2007) "If the most closely analogous state statute of limitations has

not run, the presumption of laches does not attach and the defendant bears the burden of proving the defense. But once the analogous state statute of limitations has run, the burden shifts to the plaintiff to show why laches should not apply." *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 809 F.3d 737, 746 (2d Cir. 2016) (internal citations omitted).

The statute of limitations for New York dilution claims and for New York unfair competition claims is three years. *Fed. Treasury Enter. Sojuzplodoimport v. Spirits Int'l B.V.*, 56 F. Supp. 3d 383, 386 n.15 (S.D.N.Y. Sept. 5, 2014); *Bd. of Managers of Soho Int'l Arts Condo. v. City of New York*, No. 01 Civ. 1226, 2003 WL 21403333, at *18 (S.D.N.Y. June 17, 2003).

Federal law determines when a Lanham Act claim accrues and provides that the "laches clock begins to run when the trademark owner 'knew or should have known, not simply that [the infringer] was using the potentially offending mark, but that [it] had a provable infringement claim against [the infringer].'" *Monbo v. Nathan*, No. 18-CV-5930 (MKB), 2022 WL 4591905, at *34 (E.D.N.Y. Aug. 26, 2022) (quoting *Excelled Sheepskin & Leather Coat Corp. v. Or. Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018).

Plaintiff alleges that Defendant continues to infringe on its Trade Dress and the NESPRESSO Marks to date, as it has refused to modify the design or shape of its capsule and it has refused to make changes to the manner in which it utilizes the NESPRESSO Marks in connection with its products. (Compl. ¶¶ 66, 69, 71). However, despite Defendant's continued infringing use of the NESPRESSO Marks and Trade Dress, Plaintiff demonstrated knowledge of its potential trade dress and trademark claims when it sent a demand letter in 2018 demanding that Defendant cease and desist improper use of the NESPRESSO Marks and Trade Dress. (*Id.* ¶ 66). As Plaintiff's Complaint was filed more than the three-years after this demand letter was sent, the presumption of laches applies to Plaintiff's dilution and New York unfair competition claims.

Nonetheless, the claims cannot be dismissed. The presumption is rebuttable; it simply places on Plaintiff the burden to show why laches should not apply. Unless the failure to bring suit is "inexcusable" (a very high bar indeed) it will not bar prosecution of this action; similarly, if Defendant will not suffer prejudice (and I doubt that it will) laches will not apply. Finally, Plaintiff's allegations of willful infringement preclude any consideration of a laches defense at the motion to dismiss stage. The "good-faith component of the laches doctrine is part of the fundamental principle that he who comes into equity must come with clean hands." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 107 (2d Cir. 2000) (internal citation omitted). Plaintiff explicitly alleges at various instances in the Complaint that Defendant engaged in willful infringement. (*see* Compl. ¶¶ 52, 59, 68, 78, 81). Plaintiff additionally alleges that, despite sending its demand letter to Defendant notifying it of the trademark and trade dress infringement issues as identified in the Complaint, Defendant has so far refused to modify the design or shape of its capsule or to make changes to the manner in which it utilizes the NESPRESSO Marks in connection with its products. (*Id.* ¶ 67). As "intentional infringement is a dispositive, threshold inquiry that bars further consideration of the laches defense," accepting all factual allegations in the Complaint as true, laches cannot be invoked to bar Plaintiff's claims. *Hermes Int'l.*, 219 F.3d at 107.

## V. Counts IX and X – The New York Dilution Claims – Are Dismissed As Preempted

While the Complaint fails to adequately allege that Plaintiff has standing to bring its New York dilution claims (Counts IX and X) (*see supra* Section I.2), these claims must be dismissed as they are preempted by federal law.

To state a dilution claim under N.Y. Gen. Bus. Law § 360–l, a plaintiff must allege: "(1) that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of

dilution either as a result of 'blurring' or 'tarnishment.'" *Eyal R.D. Corp. v. Jewelex New York Ltd.*, 784 F.Supp.2d 441, 447 (S.D.N.Y. 2011). However, where a plaintiff can only plead facts to allege harm from copying, a claim under section 360–l should be considered preempted." *Id.* That which is claimed in the state law claims, "must be something different from copying, or the fruits of copying, or the intent or bad faith that can be inferred from the act of copying; if the harm arises from the simple fact of copying, the claim falls within the Copyright Act and is preempted." *Id.*

Plaintiff asserts that its Complaint alleges more than copying as it alleges that Defendant engaged in deliberate acts on social media to actively encourage and exacerbate existing consumer confusion, which is a public harm. (Dkt. No. 34 at 22; Compl. ¶¶ 72-81). However, the Complaint alleges that Defendant did not take action to dispel consumer confusion – not that affirmative actions were taken to further create confusion. (*See* Compl. ¶¶ 75-76). In either case, the alleged harm still stems from the alleged act of copying. The consumer confusion that Defendant is alleged to have encouraged (or not discouraged) is caused by the copying of the NESPRESSO Marks and Trade Dress. Therefore, the New York dilution claims arise from the fruits of copying.

As Plaintiff has not plead facts to make out an independent claim under Section 360–l, but only alleges harm resulting from copying, the claim is preempted. *See Bubble Genius*, 239 F. Supp. 3d at 604.

## VI. Count IV is Not Dismissed As Duplicative or Redundant

Defendant seeks dismissal of Count IV – Plaintiff's Lanham Act claim for unfair competition, false endorsement, false association and false designation based on Defendant's use of the Trade Dress. (Compl. ¶¶ 165-87). Defendant argues that Count IV contains identical allegations to Count II – Plaintiff's Lanham Act claim for Trade Dress infringement. (*Id.* ¶¶ 112-34).

The infringement analysis under the trademark infringement and unfair competition provisions of the Lanham Act is the same. *See Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 114 (2d Cir. 2009) (citations omitted). For both claims "a plaintiff must show (1) that it has a valid mark that is entitled to protection under the Act, and (2) that use of the defendant's mark infringes, or is likely to infringe, the mark of the plaintiff," meaning that use of the mark "creates a likelihood of confusion." *Estee Lauder Inc. v. The Gap, Inc.*, 108 F.3d 1503, 1508–09 (2d Cir. 1997).

Defendant acknowledges that infringement under Lanham Act Section 43(a) is a distinct cause of action from unfair competition under Lanham Act Section 43(a). *Forschner Grp., Inc. v. Arrow Trading Co.*, 904 F. Supp. 1409, 1417 (S.D.N.Y. 1995), *aff'd*, 124 F.3d 402 (2d Cir. 1997). However, it argues that Count IV is duplicative of Count II because the allegations in Count IV mirror those in Count II, except for "swapping a couple of references to 'trade dress infringement' with Lanham Act buzzwords 'unfair competition, false endorsement, false association, and/or false designation of origin'" and "referring at one point to alleged confusing regarding 'products featuring Defendant's Infringing Capsule Trade Dress' in lieu of just 'Defendant's Infringing Capsule Trade Dress.'" (Dkt. No. 25 at 23).

Plaintiffs often assert multiple Section 43(a) claims on a single fact pattern, especially because the infringement analysis is the same. And courts have determined that Plaintiffs may recover for unfair competition even when they cannot sue for trademark/trade dress infringement. *See, e.g., Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 149 (2d Cir. 1997); *Int'l Consulting Servs. Ltd. v. Cheap Tickets, Inc.*, 140 F. App'x 305, 306 (2d Cir. 2005). Therefore, Count IV is not duplicative of Count II.

Likewise Count IV is not redundant of Count II and so it should not be struck.

Fed. R. Civ. P 12(f) provides courts a means to remove material from a pleading that it finds "redundant, immaterial, impertinent, or scandalous." "Motions to strike are generally disfavored and will not be granted unless the matter asserted clearly has no bearing on the issue in dispute." *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 829 (S.D.N.Y. 2008) (internal quotation marks and citation omitted). It is settled in this Circuit that the motion will be denied "unless it can be shown that no evidence in support of the allegation would be admissible." *Id.* (quoting *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976)).

For the same reasons that the court finds Plaintiff's unfair competition claim is not duplicative, it holds that the claim is not redundant. The motion to strike is denied.

## VII.   Leave to Amend

Plaintiff seeks leave to amend its Complaint to replead any claims that are dismissed. Fed. R. Civ. P. 15(a) states that "[t]he court should freely give leave [to amend] when justice so requires." Under this liberal standard, leave is generally given as long as (1) the party seeking the amendment has not unduly delayed, (2) that party is not acting in bad faith or with a dilatory motive, (3) the opposing party will not be unduly prejudiced by the amendment, and (4) the amendment is not futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Futility is a determination, as a matter of law, that proposed amendments would fail to cure prior deficiencies or to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Panther Partners Inc. v. Ikanos Commc'ns, Inc.*, 681 F.3d 114, 119 (2d Cir. 2012).

Plaintiff may amend its Complaint to demonstrate standing for its trademark infringement claim (Count I) if it can allege facts showing that the agreements between (i) SPN and Nestlé Nespresso SA; and (ii) Nestlé Nespresso SA and Plaintiff amount to more than exclusive licenses

and in fact are transfers of ownership akin to an assignment. That would of course necessarily incorporate the terms of the relevant exclusive licenses into the pleading and force their disclosure if a new motion to dismiss were made – which is why the proper way to amend the pleading would be to attach copies of the licenses. If, however, the licenses do not show what this court has held must be shown in order for an exclusive licensee to have standing, Plaintiff would do well to let sleeping dogs lie.

In the same way, Plaintiff has leave to amend its complaint to allege facts that would give it standing to bring a claim for dilution under N.Y. Gen. Bus. Law § 360-l (Counts IX and X). However, for such an amendment not to be futile it would have to plead facts tending to show that this claim is not preempted by federal law.

As the federal dilution claims may only be brought by the owner of a famous mark – and this does not extend to exclusive licensees, even if the exclusive license amounts to an assignment – Nespresso's request for leave to amend Counts V and VI is denied.

If SPN wishes to join this action as a plaintiff, of course, all bets are off.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's complaint is GRANTED as to Counts I, V, VI, IX and X. As to all other Counts the motion is DENIED. The Clerk of the Court is directed to remove the motion at Dkt. No. 24 from the Court's list of pending motions.

Dated: January 24, 2023

_____
U.S.D.J.

TO ALL PARTIES BY ECF