## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

NESPRESSO USA, INC., and
SOCIÉTÉ DES PRODUITS NESTLÉ S.A.

*Plaintiffs,*

v.

PEET'S COFFEE, INC.,

*Defendant.*

Civil Action No.: 1:22-cv-02209-CM-RWL

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT

Plaintiffs Nespresso USA, Inc. ("Nespresso") and Société des Produits Nestlé S.A. ("SPN") (together with Nespresso, "Plaintiffs"), by and through their undersigned counsel, Mayer Brown LLP, pursuant to the Court's January 24, 2023 Decision and Order (Dkt. No. 61), as and for their First Amended Complaint against Defendant Peet's Coffee, Inc. ("Defendant" or "Peet's"), hereby allege as follows based on knowledge of their own actions, and on information and belief as to Defendant's actions (unless indicated otherwise herein):

## NATURE OF THE ACTION

1.      This action arises out of Defendant's launch of a high-value product line, which specifically involves the manufacture, offering for sale, and sale of coffee/espresso pods through the use of the NESPRESSO trademarks and the Original NESPRESSO Capsule Trade Dress to launch, promote, offer, and sell Defendant's identical and/or highly similar goods to those of Nespresso.

2.      Defendant is willfully and falsely passing-off its line of nearly identical coffee capsules as having an affiliation, connection, or association with or to the NESPRESSO brand,

including, in particular, the Original NESPRESSO capsule. Defendant's willful conduct unsurprisingly has caused actual consumer confusion in the marketplace.

3.     Consumers throughout the United States recognize the NESPRESSO name, brand, and frustoconical-shaped Original NESPRESSO coffee/espresso capsules for their superior quality.

4.     Defendant, which is not affiliated, connected, or associated with or to Plaintiffs, launched a high-value product line of coffee/espresso capsules. However, instead of investing resources to develop consumer demand and recognition for these new products, Defendant misappropriated Plaintiffs' NESPRESSO brand. For example, there are numerous examples in the marketplace of third-party coffee/espresso capsules that: (i) are compatible with NESPRESSO-brand machines, but (ii) create a different overall impression than the Original NESPRESSO capsule. Yet, Defendant's frustoconical-shaped coffee capsule creates the same overall commercial impression as the NESPRESSO Original capsule. But that is not the extent of Defendant's unlawful conduct. Defendant also prominently touts that its confusingly similar designed capsules are compatible with Nespresso machines, referencing "Nespresso" and Plaintiffs' machine type (*i.e.*, Original) throughout its promotional materials. However, in an effort to dupe consumers, that as demonstrated *infra* has been successful, Defendant fails to display conspicuous disclaimers that are proximate to references to "Nespresso," informing consumers that its products are not licensed, affiliated, connected, or associated with or to SPN or Nespresso. Accordingly, consumers are likely to mistakenly believe and *do* mistakenly believe that, like existing and authorized partnerships, Defendant's coffee products are licensed by, affiliated, connected, and/or associated with or to Plaintiffs and the Original NESPRESSO capsule—but they are not. Defendant's willful conduct unsurprisingly has caused and is causing widespread actual

consumer confusion about whether Defendant's infringing coffee capsule has an affiliation, connection, and association with and to Plaintiffs

5.      Prior to initiating this lawsuit, Nespresso worked tirelessly for nearly four years to resolve this dispute without burdening this Court. Despite Nespresso's extensive efforts, Defendant is undeterred in its pursuit of infringing and misappropriating the NESPRESSO brand. For example, Defendant refuses to change the shape and design of its infringing coffee capsule, despite numerous alternative shapes and designs available that are compatible with NESPRESSO machines, or to display appropriate non-affiliation disclaimers, despite the ease of making such changes.

6.      To be clear, Plaintiffs welcome third parties who offer consumers different shapes and sizes of coffee capsules to use with their NESPRESSO machines. What Plaintiffs do *not* welcome, though, are third parties who compete unfairly in the marketplace by, among other things, suggesting a false affiliation with, endorsement by, sponsorship by, or license relationship with Plaintiffs for economic gain at the expense of Plaintiffs and their multimillion, decades-long investments in the NESPRESSO brand. And that is precisely what Defendant is doing. Accordingly, Plaintiffs file this First Amended Complaint for trademark infringement, trade dress infringement, unfair competition, false endorsement, false designation of origin, and false association, under federal and New York law to ameliorate the actual consumer confusion that Defendant has caused, and will likely continue to cause, as well as to remedy the damage to the NESPRESSO brand and Original NESPRESSO Capsule trade dress that Defendant has caused, and will likely continue to cause, in absence of judicial intervention. Plaintiffs also seek an injunction, an accounting, disgorgement of Defendant's ill-gotten profits, and an award of Plaintiffs' damages, attorneys' fees, and costs.

**THE PARTIES**

7.      Plaintiff Nespresso USA, Inc. is a Delaware corporation, with a principal place of business at 111 West 33rd Street, 5th Floor, New York, New York 10120, United States.

8.      Plaintiff Société des Produits Nestlé S.A. is a corporation organized and existing under the laws of Switzerland (a Swiss société anonyme) with a principal place of business at Avenue Nestlé 55, 1800 Vevey, Switzerland.

9.      Defendant Peet's Coffee, Inc. is a Virginia corporation, with a principal place of business at 1400 Park Avenue, Emeryville, California 94608.

**JURISDICTION AND VENUE**

10.     Plaintiffs' claims for trademark infringement, trade-dress infringement, and unfair competition, respectively, asserted in Counts I-IV *infra* arise under the Trademark Act of 1946 (as amended), namely, 15 U.S.C. §§ 1051 *et seq*. Therefore, this Court has subject matter and original jurisdiction over Counts I-IV pursuant to 28 U.S.C. § 1331, and 15 U.S.C. § 1121.

11.     Plaintiffs' claims for trademark infringement, trade-dress infringement, and unfair competition, respectively, asserted in Counts V-VI *infra* arise under New York common law and statutory law, and are so related to the federal claims asserted in Counts I-IV, that they form part of the same case or controversy. Therefore, this Court has supplemental jurisdiction over Counts V-VI pursuant to 28 U.S.C. §§ 1338(b) and 1367(a).

12.     Upon information and belief, Defendant transacts and solicits business on a regular, systemic, and continuous basis within the State of New York (including within this judicial district), and Plaintiffs' claims arise out of these transactions and solicitations of business. Therefore, this Court has personal jurisdiction over Defendant pursuant to § 302(a)(1) of the NEW YORK CIVIL PRACTICE LAW AND RULES ("CPLR").

4

13.     As alleged *infra*, Defendant has committed tortious acts within the State of New York (including within this judicial district), and Plaintiffs' claims arise out of these tortious acts. Therefore, this Court has personal jurisdiction over Defendant pursuant to CPLR § 302(a)(2).

14.     As alleged *infra*, Defendant's wrongful acts and conduct occurred in substantial part in this judicial district. Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2).

15.     As alleged *supra*, Defendant is subject to personal jurisdiction in this judicial district. Therefore, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

### I.     Nespresso and Its Products

16.     Nespresso is a prominent and well-recognized distributor of single-serve coffee/espresso products sold under the NESPRESSO brand in the United States. The NESPRESSO brand is synonymous with high quality, innovation, and cutting-edge design.

17.     For over three decades, Nespresso has been advertising, marketing, promoting, offering for sale, and selling coffee and espresso machines, coffee/espresso capsules that are compatible with its machines, consumables, and accessories throughout the United States under the NESPRESSO-brand (collectively, the "NESPRESSO Products").

18.     Each of the NESPRESSO Products is marketed under a brand name (*i.e.*, NESPRESSO) that is subject to a trademark registered at the U.S. Patent and Trademark Office ("USPTO"). The owner of each trademark is SPN.

5

## II.   Nespresso's Intellectual Property

### A.  The Original NESPRESSO Capsule Trade Dress

19.     The  NESPRESSO  Products  include,  *inter  alia*,  the  unique  and  iconic,
frustoconical-shaped Original NESPRESSO capsule:



(the "Original NESPRESSO Capsule")

20.     As shown in paragraph 19 *supra*, the trade dress that Nespresso uses to identify
itself as the exclusive source of the Original NESPRESSO Capsule consists of the unique
combination of four distinct elements:

(a)     A frustoconical top portion (a cone with the tip removed), transitioning
abruptly to a more vertical side wall that connects to the flange of the
capsule;

(b)     An opaque color;

(c)     A circular bottom that is wider in diameter than the top of the capsule; and

(d)     An inverted frustoconical indentation at the top.

21.     The overall commercial impression created by the unique combination of the four distinct elements, as articulated in paragraph 20 *supra*, are referred to hereinafter collectively as the "Original NESPRESSO Capsule Trade Dress."

22.     As shown *infra*, the Original NESPRESSO Capsule Trade Dress maintains a consistent overall look and feel throughout Nespresso's line of Original NESPRESSO Capsule products:





## ISPIRAZIONE ITALIANA

Unique flavors inspired by Italian roasting traditions passed down through generations

Discover the range ➤



**NAPOLI**

Dark & Creamy
0.84 oz | Ristretto
▬▬▬▬▬▬▬ 13

$0.75   +

$7.50/ Sleeve of 10



**VENEZIA**

Balanced & Thick
0.84 oz | Ristretto
▬▬▬▬ 8 ▭▭▭▭▭

$0.75   +

$7.50/ Sleeve of 10



HAVE YOU REDEEMED YOUR SIGNATURE WELCOME GIFT?>



**PALERMO KAZAAR**

Intense & Syrupy
0.84 oz | Ristretto
▬▬▬▬▬▬ 12 ▭

$0.75   +

$7.50/ Sleeve of 10



**RISTRETTO ITALIANO**

Powerful & Contrasting
0.84 oz | Ristretto
▬▬▬▬▬ 10 ▭▭▭

$0.75   +

$7.50/ Sleeve of 10



**RISTRETTO ITALIANO DECAFFEINATO**

Powerful & Contrasting
0.84 oz | Ristretto
▬▬▬▬▬ 10 ▭▭▭

$0.75   +

$7.50/ Sleeve of 10



**FIRENZE ARPEGGIO**

Intense & Creamy
0.84 oz | Ristretto
▬▬▬▬ 9 ▭▭▭▭

$0.75   +

$7.50/ Sleeve of 10



**FIRENZE ARPEGGIO DECAFFEINATO**

Intense & Creamy
0.84 oz | Ristretto
▬▬▬▬ 9 ▭▭▭▭

$0.75   +

$7.50/ Sleeve of 10



**ROMA**

Full & Balanced
0.84 oz | Ristretto
▬▬▬▬ 8 ▭▭▭▭▭

$0.75   +

$7.50/ Sleeve of 10



**GENOVA LIVANTO**

Round & Balanced
1.35 oz | Espresso
▬▬▬ 6 ▭▭▭▭▭▭

$0.75   +

$7.50/ Sleeve of 10

## WORLD EXPLORATIONS
Journey through the complex profiles and lingering tastes of our Lungo range



**NEW**

A deep-roasted, intense, and full-bodied espresso with a woodsy aroma and punchy bitterness.

### MIAMI ESPRESSO

Cereal
1.35 oz | Espresso
■■■■■■■■■ 9 ▢▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

### CAPE TOWN ENVIVO LUNGO

DARK ROAST
■■■■■■■■■■ 10 ▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

### STOCKHOLM FORTISSIO LUNGO

Rich & Full-bodied
3.7 oz | Lungo
■■■■■■■■ 8 ▢▢▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

### TOKYO VIVALTO LUNGO

Flowery & Complex
3.7 oz | Lungo
■■■■■■ 6 ▢▢▢▢▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

### VIENNA LINIZIO LUNGO

Round & Smooth
3.7 oz | Lungo
■■■■■■ 6 ▢▢▢▢▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

### SHANGHAI LUNGO

Fruitiness & Fine Acidity
3.7 oz | Lungo
■■■■■ 5 ▢▢▢▢▢▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

### BUENOS AIRES LUNGO

Sweet & Cereal
3.7 oz | Lungo
■■■■ 4 ▢▢▢▢▢▢▢▢▢
**$0.80** +
**$8.00/** Sleeve of 10

## ESPRESSO
Authentic espressos inspired by Italian roasting traditions






### CAPRICCIO

Rich & Distinctive
1.35 oz | Espresso
■■■■■ 5 ▢▢▢▢▢▢▢▢
**$0.75** +
**$7.50/** Sleeve of 10

### VOLLUTO

Sweet & Light
1.35 oz | Espresso
■■■■ 4 ▢▢▢▢▢▢▢▢▢
**$0.75** +
**$7.50/** Sleeve of 10

### VOLLUTO DECAFFEINATO

Sweet & Light
1.35 oz | Espresso
■■■■ 4 ▢▢▢▢▢▢▢▢▢
**$0.75** +
**$7.50/** Sleeve of 10

### COSI

Mild & Delicately Toasted
1.35 oz | Espresso
■■■■ 4 ▢▢▢▢▢▢▢▢▢
**$0.75** +
**$7.50/** Sleeve of 10









23.     The Original NESPRESSO Capsule Trade Dress is arbitrary, unique, aesthetic, and,

as evidenced by the presence of numerous different third-party capsule designs that are available

for sale in the United States market and that work with NESPRESSO-branded machines (among

other things), is not functional. Indeed, while certain third parties sell capsules that are compatible

with NESPRESSO Products, these third-party capsules vary in shape and design, and feature trade dresses that create different overall commercial impressions from Plaintiffs' Original NESPRESSO Capsule Trade Dress. Where third parties have sold or sell capsules that infringe Nespresso's rights, SPN and Nespresso have and do actively enforce against such uses.

24.     The Original NESPRESSO Capsule Trade Dress is the subject of United States Trademark Application Serial No. 88/215,860 (the "'860 Application").

25.     Nespresso's corporate affiliate, Plaintiff SPN, owns the Original NESPRESSO Capsule Trade Dress, and SPN is the applicant of record in connection with the '860 Application.

26.     As the owner of the Original NESPRESSO Capsule Trade Dress, SPN has the exclusive right in and to the Original NESPRESSO Capsule Trade Dress, including the right to license rights in and to the same.

27.     At all relevant times, Nespresso has had—and has—the right and license to use the Original NESPRESSO Capsule Trade Dress to advertise, market, promote, offer for sale, and sell NESPRESSO Products in the United States.

28.     Accordingly, Nespresso is responsible for the marketing and distribution of the NESPRESSO Products in the United States through use of the Original NESPRESSO Capsule Trade Dress, and Nespresso is the sole distributor of NESPRESSO Products in the United States.

29.     Nespresso takes that responsibility seriously by ensuring that the contents, packaging, and labeling of NESPRESSO Products sold in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers. These activities have ensured continued goodwill for the Original NESPRESSO Capsule Trade Dress, which in turn allows Nespresso to profit from the sale of NESPRESSO Products to U.S. consumers.

30.     For over three decades, Nespresso has invested (and continues investing) hundreds of millions of dollars on advertising, marketing, and promoting the Original NESPRESSO Capsule throughout the United States. In the United States, Nespresso's advertising, marketing, and promotional efforts include, for example, Internet advertisements, stand-alone Nespresso retail stores in most major United States cities, prominent product displays within such high-end stores as Bloomingdale's and Williams-Sonoma, leading brick-and-mortar retailers such as Target, Bed Bath & Beyond, as well as shopping malls, national television ads that feature celebrity endorsements, and a partnership with a famous third-party coffee brand.

31.     Nespresso's aforementioned advertising, marketing, and promotional efforts prominently feature the Original NESPRESSO Capsule Trade Dress. For example, when consumers enter many of the aforementioned Nespresso boutique stores, they encounter artwork comprised of the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress:



32.     As another example, when consumers encounter many of the aforementioned product displays, they encounter artwork comprised of the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress:



33.     The Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress has enjoyed enormous commercial success throughout the United States. Indeed, hundreds of millions of dollars' worth of the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress have been sold in the United States.

34.     The Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress has been the subject of widespread, unsolicited media coverage for over three decades. This unsolicited media coverage includes, for example: *The New York Times*; *The Guardian*; *Time*; *Bloomberg*; *Business Insider*; *Mic*; *Environmental Leader*; and *Recycling Today*.

35.     Due to Nespresso's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of the Original NESPRESSO

Capsule featuring the Original NESPRESSO Capsule Trade Dress, consumers in the United States associate the Original NESPRESSO Capsule Trade Dress uniquely with Nespresso and recognize the Original NESPRESSO Capsule Trade Dress as identifying Nespresso as the exclusive source of goods featuring such Trade Dress (including, for example, the Original NESPRESSO Capsule).

36.     Due to Nespresso's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress, the Original NESPRESSO Capsule Trade Dress has become widely recognized among consumers in the United States.

**B. The NESPRESSO Marks**

37.     SPN also owns the NESPRESSO word and design mark (together, the "NESPRESSO Marks"), including the following United States trademark registrations for the NESPRESSO Marks:

| Mark | Registration No. | Registration Date | Int. Cls. |
|---|---|---|---|
| NESPRESSO | 1,607,148 (the "'148 Registration") | July 24, 1990 | 7, 11 |
| NESPRESSO | 2,009,751 (the "'751 Registration") | October 22, 1996 | 30 |
| NESPRESSO | 3,813,444 (the "'444 Registration) | July 6, 2010 | 30, 35, 43 |
| NESPRESSO | 4,476,277 (the "'277 Registration) | January 28, 2014 | 11, 30, 35, 43 |
| NESPRESSO | 4,569,765 (the "'765 Registration) | July 15, 2014 | 9, 21 |
| NESPRESSO | 4,760,496 (the "'496 Registration) | June 23, 2015 | 16, 37, 40, 41 |

38.    Attached hereto as **Exhibit 1** are true and correct copies of the registration certificates for the '148, '751, '444, '277, '765, and '496 Registrations, respectively.

39.    The '148, '751, '444, '277, '765, and '496 Registrations, respectively, are on the Principal Trademark Register. *See* Exh. 1.

40.    Because the '148, '751, '444, '277, '765, and '496 Registrations, respectively, are on the Principal Trademark Register, all of the NESPRESSO Marks are *prima facie* valid.

41.    The '148, '751, '444, '277, '765, and '496 Registrations are incontestable within the meaning of 15 U.S.C. § 1065.

42.    Because the '148, '751, '444, '277, '765, and '496 Registrations are incontestable, the NESPRESSO Marks covered by these six Registrations are conclusively valid.

43.    As the owner of the NESPRESSO Marks, SPN has the exclusive right in and to the NESPRESSO Marks, including the right to license rights in and to the same.

44.    At all relevant times, Nespresso has had—and has—the right and license to use the NESPRESSO Marks to advertise, market, promote, offer for sale, and sell NESPRESSO Products in the United States.

45.    Accordingly, Nespresso is responsible for the marketing and distribution of the NESPRESSO Products in the United States through use of the NESPRESSO Marks, and Nespresso is the sole distributor of NESPRESSO Products in the United States.

46.    Nespresso takes that responsibility seriously by ensuring that the contents, packaging, and labeling of NESPRESSO Products sold in the United States comply with U.S. laws and regulations; by subjecting its products to rigorous quality control standards; and by providing high-quality post-sale services to its customers. These activities have ensured continued goodwill

for the NESPRESSO Marks, which in turn allows Nespresso to profit from the sale of NESPRESSO Products to U.S. consumers.

47.    For over three decades, Nespresso has invested (and continues investing) hundreds of millions of dollars on advertising, marketing, and promoting NESPRESSO Products throughout the United States. In the United States, Nespresso's advertising, marketing, and promotional efforts include, for example, Internet advertisements, stand-alone Nespresso retail stores in most major United States cities, prominent product displays within such high-end stores as Bloomingdale's and Williams-Sonoma, leading brick and mortar retailers such as Target, and Bed Bath & Beyond as well as shopping malls, national television ads that feature celebrity endorsements, and a partnership with a famous third-party coffee brand. Nespresso's aforementioned advertising, marketing, and promotional efforts prominently feature the NESPRESSO Marks.

48.    NESPRESSO Products offered under the NESPRESSO Marks have enjoyed enormous commercial success throughout the United States. Indeed, hundreds of millions of dollars' worth have been sold in the United States.

49.    NESPRESSO Products offered under the NESPRESSO Marks have been the subject of widespread, unsolicited media coverage for nearly three decades. This unsolicited media coverage includes, for example: *The New York Times*; *Yahoo*; *New York Magazine*; *Mashable*; *MSN.com*; *Marketwatch*; *The Telegraph*; *Nerd Wallet*; *Wired*; *CNBC.com*; and *The Motley Fool*.

50.    Because of Nespresso's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of NESPRESSO Products offered under the NESPRESSO Marks, consumers in the United States associate the NESPRESSO

Marks uniquely with Plaintiffs and recognize the NESPRESSO Marks as identifying Plaintiffs as the exclusive source of goods offered under those Marks.

51.     Because of Nespresso's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of NESPRESSO Products offered under the NESPRESSO Marks, the NESPRESSO Marks have become widely recognized among consumers in the United States.

**C.     SPN and Nespresso's Extensive Enforcement Efforts**

52.     Plaintiffs have the right to police the marketplace in the United States and enforce the Original NESPRESSO Capsule Trade Dress, and the NESPRESSO Marks against third parties. These rights include the ability to bring lawsuits against third parties for infringing the Original NESPRESSO Capsule Trade Dress, and/or the NESPRESSO Marks.

53.     Plaintiffs vigorously enforce their rights in and to the Original NESPRESSO Capsule Trade Dress, and the NESPRESSO Marks, respectively, in the United States.

54.     For example, in just the past four years, Plaintiff Nespresso has sent over thirty cease-and-desist letters to third parties for infringing the original NESPRESSO Capsule Trade Dress, and/or the NESPRESSO Marks.

55.     As another example of Plaintiffs' vigorous enforcement efforts, Plaintiff SPN has opposed the registration by the USPTO of nearly a dozen infringing "PRESSO"-formative marks.

56.     As a further example of Plaintiffs' vigorous enforcement efforts, in exceptional instances where matters could not be resolved amicably with dialogue, Nespresso has filed lawsuits in federal-district court, including in this judicial district, against third parties for infringing the original NESPRESSO Capsule Trade Dress, and/or the NESPRESSO Marks.

III.     **Defendant's Unlawful Activities**

57.     For more than three decades, NESPRESSO Products (including the Original NESPRESSO Capsule, featuring the Original NESPRESSO Capsule Trade Dress) have been prominently displayed inside Nespresso's stores and catalogs, on Nespresso's website, and on leading third-party e-commerce websites. Accordingly, Defendant is aware of the commercial success of the NESPRESSO brand and NESPRESSO Products, including, in particular, the original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress.

58.     As part of Nespresso's regular policing and enforcement efforts, it discovered that Defendant was advertising, marketing, and promoting a line of coffee/espresso capsules that are nearly identical and confusingly similar to Plaintiffs' Original NESPRESSO Capsule. As alleged herein, Defendant sought to generate turnkey brand recognition for its new line of coffee/espresso capsules by trading off: (i) the goodwill of the NESPRESSO brand and the Original NESPRESSO Capsule Trade Dress, and (ii) consumers' familiarity with NESPRESSO Products, as a result of Nespresso's extensive advertising, marketing, and promotional efforts, as well as the commercial success and widespread media coverage of the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress.

A.     **Defendant's Infringing Capsule Trade Dress**

59.     Defendant's willful ploy began with its use of trade dress for a coffee capsule that infringes the Original NESPRESSO Capsule Trade Dress.

60.     Reproduced *infra* is an image of Defendant's infringing coffee capsule:



(the "Infringing Capsule")

61.     Reproduced *infra* is an image of Defendant's Infringing Capsule (inset right) and the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress (inset left):

| The Original NESPRESSO Capsule | Defendant's Infringing Capsule |
|---|---|



62.     As illustrated below, the trade dress that Defendant uses for Defendant's Infringing Capsule copies not only each element of the Original NESPRESSO Capsule Trade Dress, but also arranges each element in the same combination as the Original NESPRESSO Capsule Trade Dress:

**Original NESPRESSO Capsule Trade Dress**     **Defendant's Infringing Capsule Trade Dress**





**TRADE DRESS ELEMENTS COPIED**

√   **A frustoconical top portion (a cone with the tip removed), transitioning abruptly to a more vertical side wall that connects to the flange of the capsule (arrow #1)**

√   **An opaque color (arrow #2)**

√   **A circular bottom that is wider in diameter than the top of the Capsule (arrow #3)**

√   **An inverted frustoconical indentation at the top (arrow #4)**

63.     The trade dress that Defendant uses for its Infringing Capsule renders it nearly identical and confusingly similar to the Original NESPRESSO Capsule. For example, as shown in paragraph 62 *supra*, just like the Original NESPRESSO Capsule Trade Dress, the trade dress that Defendant uses for its Infringing Capsule consists of:

(a)     A frustoconical top portion (a cone with the tip removed), transitioning abruptly to a more vertical side wall that connects to the flange of the capsule;

(b)     An opaque color;

(c)     A circular bottom that is wider in diameter than the top of the capsule; and

(d)     An inverted frustoconical indentation at the top.

21

64.     The four elements of the trade dress that Defendant uses for its Infringing Capsule, as articulated in paragraph 63 *supra*, are referred to hereinafter collectively as "Defendant's Infringing Capsule Trade Dress."

65.     As shown in paragraph 62 *supra*, the combination of the elements of Defendant's Infringing Trade Dress on Defendant's Infringing Capsule creates the same overall commercial impression as the Original NESPRESSO Capsule featuring the Original NESPRESSO Capsule Trade Dress. For example, the opaque color, frustoconical top portion, angled and straight sides connecting to the flange of the capsule, circular bottom, and inverted frustoconical indentation at the top of Defendant's Infringing Capsule appear identical in diameter, height, and width, and confusingly similar in overall appearance, to the Original NESPRESSO Capsule. Moreover, as shown in paragraph 61 *supra*, the slight ridges in Defendant's Infringing Capsule fail to distinguish or differentiate Defendant's Infringing Capsule from Nespresso's Original NESPRESSO Capsule.

**B. Defendant's Unlawful Uses of the NESPRESSO Marks to Launch and Garner Sales for Defendant's Infringing Capsule (2018-2020)**

66.     The next act in Defendant's willful ploy includes using the NESPRESSO Marks to advertise, market, promote, offer for sale, and sell Defendant's Infringing Capsules.

67.     In or about July 2018, Defendant launched a new line of coffee/espresso pods. To promote its new product line, Defendant's website prominently used the NESPRESSO word mark, followed by the universally recognized registered trademark symbol (*i.e.*, ®), to claim its Infringing Capsule is "now in capsules designed to fit your NESPRESSO® OriginalLine*." In an attempt to "check a box" while minimizing the chances that consumers would view the message, Defendant buried a disclaimer in small, inconspicuous wording at the bottom of its website. On information and belief, Defendant placed the small, inconspicuous disclaimer at the bottom of its website because it knew that consumers were unlikely to see and/or read it when placed in that

location. On information and belief, consumers did not see or read the disclaimer on Defendant's website – before or after they saw and read the wording "now in capsules designed to fit your NESPRESSO® OriginalLine*."



A true and correct copy of images accurately depicting Defendant's website in or around January 2019 is attached hereto as **Exhibit 2**.

68.    As shown in the example in paragraph 67 *supra*, Defendant failed to use proper descriptive language to convey that the Infringing Capsules are compatible with NESPRESSO-branded machines and improperly referenced the NESPRESSO Marks as nouns, instead of adjectives that modify a noun. *See also* Exh. 2.

69.    Defendant's use of the NESPRESSO Marks in such a manner and without display of a prominent and proximate non-affiliation was not and is not necessary to advertise Defendant's Infringing Capsule. Indeed, as evidenced by Defendant's own responses to consumer inquiries about Defendant's "Nespresso capsules" on social media whereby Defendant responded by referring to its capsules as "Espresso Capsules," Defendant's espresso pods may be readily identified without reference to NESPRESSO. Further, prominent and proximate non-affiliation disclaimers can easily be displayed.

70.    Additionally, Defendant used the registered trademark symbol—"®"—to denote NESPRESSO as a registered trademark outside of any disclaimer statements and in connection with statements that conveyed compatibility with NESPRESSO-branded machines, which falsely suggested an affiliation, connection, and/or association with and/or to Nespresso (*e.g.*, a license arrangement or other permission granted by Nespresso), particularly when unaccompanied by a prominent and proximate non-affiliation disclaimer.



A true and correct copy of an image accurately depicting Defendant's product packaging as it existed in or around July 2018 is attached hereto as **Exhibit 3**.

71.     As discussed, *supra*, Defendant's collective activities, including: (i) failing to display non-affiliation disclaimers that are prominent and proximate to Peet's references to NESPRESSO; (ii) use of the registered ® symbol in connection with the use of NESPRESSO; and (iii) use of NESPRESSO as both a noun and tagline to convey compatibility with Defendant's Infringing Capsule give consumers the false impression that Defendant's Infringing Capsule is affiliated with, endorsed by, sponsored by, or licensed by Nespresso, though it is not.

72.     At or around that same time that Defendant launched its Infringing Capsule, July 2018, to conjure up quick product recognition and sales, Defendant began promoting its capsules in retail stores such as Target in ways that unfairly traded off Plaintiffs' goodwill in the NESPRESSO brand and constituted unfair competition. Particularly, Peet's displayed the Infringing Capsules alongside and/or in close proximity to Nespresso's machines and genuine

Nespresso product displays to cause consumers to falsely believe Defendant's Infringing Capsules were affiliated, connected, and/or associated with and/or to Nespresso, as shown *infra*:



California Target Display c. 2018

73.     On October 19, 2018, counsel for Plaintiffs issued a demand letter to Defendant, notifying Defendant of the infringement issues identified above, and demanding that Defendant cease and desist improper use of the NESPRESSO Marks, the Original NESPRESSO Capsule Trade Dress, and that Defendant take immediate corrective action to dispel the likelihood of consumer confusion caused as a direct result of Defendant's improper actions. A true and correct copy of the October 19, 2018 demand letter is attached hereto as **Exhibit 4**.

74.     Defendant responded by denying that Defendant's actions infringed the NESPRESSO Marks or the Original NESPRESSO Capsule Trade Dress. Defendant also refused

to modify the design or shape of Defendant's Infringing Capsule, and refused to make simple but important changes to the manner in which it references NESPRESSO in connection with Defendant's products to dispel the actual consumer confusion occurring in the marketplace as a direct result of Defendant's actions.

### C. Defendant's Ongoing Infringement of NESPRESSO's Intellectual Property Rights (2021-present)

75.     Despite Plaintiffs' diligent efforts and numerous attempts to resolve this matter over the course of years, Defendant continues its deliberate and improper use of the NESPRESSO Marks and the Original NESPRESSO Capsule Trade Dress to offer and sell the Infringing Capsules.

76.     For example, in or about 2021, Defendant made non-material changes to the disclaimer on the product packaging of the Infringing Capsules:



Source: https://www.peets.com/products/ristretto-espresso-capsules; *see* **Exhibit 5**



Source: https://www.peets.com/products/espresso-capsules-sampler; *see* **Exhibit 6**

77.     As illustrated *supra*, Defendant's website remains unchanged from 2018 insofar as Defendant continues to bury a disclaimer in small, inconspicuous wording at the bottom of its website. On information and belief, Defendant continues to place the small, inconspicuous disclaimer at the bottom of its website because it knows that consumers are unlikely to see and/or read it when placed in that location. On information and belief, consumers do not see or read the disclaimer on Defendant's website – before or after they see and read the wording "Compatible with NESPRESSO* Original Machines."

78.     In or about 2021, Defendant changed its product packaging for Defendant's Infringing Capsules. As shown *supra*, Defendant's product packaging continues to use the NESPRESSO Marks. Moreover, Defendant's product packaging contains a disclaimer on the back of its product packaging only, meaning that prominent and proximate disclaimers are not displayed alongside Defendant's descriptive references to NESPRESSO.

**D. Defendant's Actions Are Causing Actual Confusion in the Marketplace**

79.    Defendant's advertising, marketing, and promotional activities complained of herein are not just likely to cause consumer confusion—they *are* causing actual confusion in the marketplace. For example, consumer reviews of the below-listed products *on Defendant's own website* demonstrate that consumers have mistakenly believed that Defendant's Infringing Capsule has an affiliation, connection, and/or association with and/or to the Original NESPRESSO Capsule in connection with the reviews of Defendant's: (a) CREMA SCURA ESPRESSO CAPSULES; (b) NERISSIMO ESPRESSO CAPSULES; (c) RISTRETTO ESPRESSO CAPSULES; (d) RICHEZZA ESPRESSO CAPSULES; and (e) DECAFFEINATO RISTRETTO ESPRESSO CAPSULES:

*(a) CREMA SCURA ESPRESSO CAPSULES*

★★★★★    👤 **MIKALA505**    📍 Kelseyville, CA                    🕐 a year ago

**Creama Scura for Nespresso is a Dreama**

We are so thankful that Peets paired up with Nespresso to create pods for coffee. Nothing against Keurig) This espresso is creamy with a bold flavor and the hint of chocolate which we add to our coffee and it provides a little extra "somethin" to our ccuppa. Thanks you Peets: deeeelish!!

Recommends this product ⊘
                Yes

Helpful?  👍 0   👎 0     Report

★★★★★    👤 **M&M**                                    🕐 a year ago

**My favorite!**

Crema Scura is my favorite Nespresso capsule. It's bold without bitterness.

Helpful?  👍 0   👎 0     Report

★★★★★    ⚇ ANONYMOUS    ⦿ Pelham, NY                          🕓 a year ago

**So good!**

My favorite Nespresso capsule...great with milk. Works for me!

Recommends this product ⊘
                            Yes

Helpful?  👍 1  👎 0    Report

★★★★★    ⚇ ANONYMOUS                                         🕓 a year ago

**The best**

The best Nespresso pod. I tried dozens, this is by far the best.

Helpful?  👍 0  👎 0    Report

★★★★★    ⚇ ANONYMOUS    ⦿ TX                                 🕓 a year ago

**Love These Pods**

Best nespresso pod I have found. Love they use aluminum casing. Fresh, smooth taste, and not bitter.

Recommends this product ⊘
                            Yes

Helpful?  👍 0  👎 0    Report

★★★★★   👤 MRTIMMY   📍 SF Bay Area                    🕐 a year ago

**First time Peet's Capsule experience!**

As a long time Peet's Dark Roast Whole Bean fan - French Press and Aeropress, I've avoided the coffee capsule fad some of my friends have taken to. But during the 2020 lockdown I've taken to some hobby coffee experimentation.

I purchased a Nanopresso portable espresso maker and found grinding Peet's beans produces a decent espresso shot. The Nanopresso came with a Nespresso capsule adapter but I'd not used it until today. I purchased a pack of Peet's Capsules at Costco yesterday and brewed up my first capsule coffee this morning. - The Peet's Crema Scura I brewed was rich, nutty and creamy. Recommended! Good job, Peet's! - I WILL re-cycle!

Will this put me off my Peet's Dark Roast Whole Bean habit? Certainly not. But as a single guy home alone, a quick 'espresso' via Peet's Nespresso capsules from time to time will be a nice change of pace. Thanks, Peet's!

Recommends this product ✓
                          Yes



Helpful?   👍 3   👎 1    Report

*(b) NERISSIMO ESPRESSO CAPSULES*

★★★★★   👤 MARYT   📍 Boston, ma                    🕐 2 years ago

**Perfect espresso every time!**

the Peet 's nespresso pods are the best! I pop one in and leave in fridge overnight for iced latte in the morning!

Recommends this product ✓
                          Yes

Helpful?   👍 0   👎 0    Report

★★★★★        👤 ANONYMOUS        📍 Southern Oregon                    🕐 2 years ago

**Real Espresso flavor!**

I have been using Peet's Nespresso pods for about 6 months and I love them! I have had my own professional level espresso machine and grinder, but it was A LOT of work! The Nerissimo Capsules deliver real espresso flavor and crema with a lot less hassle! Plus Peet's recycling program makes the system more eco friendly!

Recommends this product  ⊘
                        Yes

Helpful?  👍 0  👎 0    Report

★★★★★        👤 THECOPIERGUY        📍 Greenbrae CA                    🕐 2 years ago

**Peet's Nespresso Cartridges**

Right from the start our whole family has been enjoying the cartridges and with the quick turnaround we get them in less then 3 days and with free shipping to boot!

Recommends this product  ⊘
                        Yes

Helpful?  👍 1  👎 0    Report

★★★★★        👤 STEVE        📍 Kirkland, WA                    🕐 2 years ago

**Excellent, Deep Flavor**

Got these capsules as part of a gift, and have really liked them. A very deep flavor, probably the best I have had in a Nespresso pod

Recommends this product  ⊘
                        Yes

Helpful?  👍 0  👎 0    Report

32

*(c) RISTRETTO ESPRESSO CAPSULES*

★★★★★   👤 **SANDY P**   📍 St Louis, MO                      🕒 a year ago

**The great taste of Peets coffee! LOVE IT!**

I love it's taste and wish this like all Peets Nespresso pods were more widely available! In fact, how about a chain of Peets stores nationwide!

Recommends this product  ⊘
                                  Yes

Helpful?  👍 0   👎 0     Report

---

★☆☆☆☆   👤 **YAJ**   📍 Irving TX                      🕒 2 years ago

**60%.** **Peets AL Nespresso Pod Failure**

---

Purchased 80 Peet's Nespresso pods of various intensity. After trying various pods at least 6 out of 10 would not work. The AL TOP would not allow penetration and then bypassed water into the drain. i have a Nespresso Expert Machine recently descaled and works fine with other pods , including Starbucks purchased on amazon.

Recommends this product  ⊗
                                  No



Helpful?  👍 4   👎 9     Report

*(d) RICHEZZA ESPRESSO CAPSULES*

★★★★★   👤 ALICE81   📍 Oregon                                🕐 2 years ago

**Peet's Nespresso is GREAT**

I tried for the first Peet's Espresso for Nespresso. It is fantastic! I am hooked. I tried the Ricchezza, which was the most popular. It did not disappoint !

Recommends this product ⊘
                              Yes

Helpful?   👍 0   👎 0      Report

*(e) DECAFFEINATO RISTRETTO ESPRESSO CAPSULES*

★★★★★   👤 ROBIN   📍 Washington, DC                        🕐 a year ago

**Best decaf nespresso**

Now it's very easy to have a delicious decaf espresso or cappacino after dinner with these great ristretto capsules.

Recommends this product ⊘
                              Yes

Helpful?   👍 1   👎 0      Report

★★★★★   👤 SUZY                                           🕐 2 years ago

**Great products**

I am happy with the purchase. Peet's nespresso Decaf capsule is my favorite!

Helpful?   👍 0   👎 0      Report

34

★★★★★      EDNA   📍 Greensboro, NC                              🕐 a year ago

**Delicious decaf**

Best espresso decaf I can find. We tried all Nespresso decaf coffees and like Peets the best!

Recommends this product ⊘
                    Yes

Helpful?  👍 0   👎 0    Report

80.    Consumer reviews on leading e-commerce websites which offer and sell both

Nespresso's Capsules and the Infringing Capsules, such as Amazon.com, reflect additional

examples of the actual consumer confusion that is occurring in the marketplace:

 Spyke

★★★★☆ **The best nespresso pods**
Reviewed in the United States on January 27, 2021
Flavor Name: Crema Scura (Intensity 9)    Size: 10 Count (Pack of 5)    Verified Purchase
The best nespresso pod in my opinion.

    Helpful        Report abuse

Source: https://www.amazon.com/Peets-Coffee-Intensity-Compatible-Nespresso/product-
reviews/B07DDLCWJF/ref=cm_cr_arp_d_viewopt_kywd?ie=UTF8&reviewerType=all_reviews
&pageNumber=1&filterByKeyword=best+nespresso+pods&sortBy=recent

 Allison Jean

★★★★★ Love Peet's Coffee
Reviewed in the United States on October 14, 2020
Flavor Name: Variety Pack    Size: 10 Count (Pack of 4)    Verified Purchase
I love to hang out at Peet's Coffee House so when I can't leave the house I still have Peet's at home. Great flavor from Nespresso!

    Helpful       Report abuse

Source: https://www.amazon.com/Peets-Coffee-Intensity-Compatible-Nespresso/product-
reviews/B07DDLCWJF/ref=cm_cr_getr_d_paging_btm_next_2?ie=UTF8&reviewerType=all_re
views&pageNumber=2&sortBy=recent&filterByKeyword=Love+peet%27s+coffee

81.     As a further example, and as a direct result of Defendant's deliberate marketing scheme, as shown below, in a response to Defendant's July 15, 2018 post advertising the product launch of its Infringing Capsules, consumers mistakenly believed that Defendant's Infringing Capsule was part of a "collaboration" between Defendant and Nespresso:



**Kris Moosie**
Super! I dropped by the local Peet's yesterday hoping to pick up some of the Nespresso capsules and sadly they didn't carry them. Good timing tomorrow.

3y



**Steven Moody-Isaac**
Matt Asbury Pete's coffee nespresso capsules!

3y                                         👍 1

Source: https://www.facebook.com/peets/photos/a.421566466189/10155530590891190

82.     Defendant is compounding its unlawful conduct by perpetuating consumers' actual confusion. For example, set forth below is a February 10, 2019 consumer comment indicating confusion resulting from Defendant's February 8, 2019 Facebook.com advertisement. Notably, Defendant's reply made no attempt to dispel this actual consumer confusion:



**Audrey Van den Akker**
I absolutely love the black tie and that you also have the Nespresso capsules now. Just wondering when you're coming out with decaf/dark pods? Any ETA on that? 😊

Like · Reply · 2y



✏ **Author**
**Peet's Coffee** ✓
Hey Audrey, it's great to hear you're a Peet's fan! We plan on expanding our espresso capsule offerings later this year. If you're interested in a strong espresso, I recommend trying our Nerissmo espresso capsule which is an intensity 11. Cheers, Kristina

Like · Reply · 2y

Source: https://www.facebook.com/peets/photos/a.421566466189/10155952599126190

83.     Additional advertisements by Defendant related to the Infringing Capsules, on facebook.com, for example on December 25, 2020, continued to generate actual consumer confusion. Defendant continued to reply to consumer comments without any action taken to dispel consumer confusion. In fact, when a consumer referred to the Infringing Capsule as "nespresso pods," Defendant responded slyly, referring to the capsules as "Espresso Capsules," making no statement that its capsules are not licensed by, endorsed by, or affiliated with SPN, Nespresso, or the NESPRESSO brand in any way:



Source: https://www.facebook.com/peets/posts/10157691690506190

84.     Consumers on Twitter.com have also demonstrated actual confusion between Plaintiff's Original NESPRESSO Capsule and the Infringing Capsule:



**Eric**
@EricERK

@peetscoffee My 160 nespresso pods that were delivered a few days ago expire in 2 months and 28 days, what gives?

5:48 PM · Feb 28, 2019 · Twitter Web Client

Source: https://twitter.com/EricERK/status/1101252754402553856

37

85.     For example, in one instance, a customer mistakenly referred to the Infringing

Capsules as "Nespresso capsules." Defendant, in furtherance of its willful ploy to trade off the

NESPRESSO brand and Original NESPRESSO Capsule, slyly responded to the consumer by

referring to the Infringing Capsules as "Espresso Capsules," but failed to explain that its capsules

are not licensed by, endorsed by, or affiliated with SPN, Nespresso, or the NESPRESSO brand in

any way:



عزّة
@birdheart32                                                                  • • •

Replying to @peetscoffee

## Hello, is peets' Nespresso capsules No. 8 with like-wine taste contain real wine substances?

5:26 PM · May 9, 2020 · Twitter for Android

         ♡              ⇄              ♡              ⬆

**Peet's Coffee** ✓ @peetscoffee · May 11, 2020                              • • •
Replying to @birdheart32
It's simply a flavor note. Our Espresso Capsules are not flavored and is
simply coffee.

    ♡  1         ⇄  1         ♡  1         ⬆

عزّة @birdheart32 · May 14, 2020                                            • • •
Thank u

    ♡              ⇄              ♡              ⬆

Source: https://twitter.com/birdheart32/status/1259233228587745290

86.     Unsurprisingly, Twitter users continue to express actual confusion between

Plaintiffs' Original NESPRESSO Capsule and the Infringing Capsule. For example:



**Larry Silverman**
@SilvermanLarry

⋯

**@peetscoffee** I have loved your Crema Scura
Nespresso pods for years, but I just switched away
from the pod system. Can you tell me what whole bean
product of yours is most similar to the Crema Scura
pods?

9:23 AM · May 2, 2021 · Twitter for Android

💬            🔁            ♡            ↑

Source: https://twitter.com/SilvermanLarry/status/1388846613267984386

87.     Given the widespread actual consumer confusion that is occurring and Defendant's
brazen refusal to take corrective actions, Defendant has given Plaintiffs no choice but to bring this
action to protect their most valuable assets, their intellectual property, and curb the extensive
consumer confusion caused by Defendant's deliberate scheme to profit from the goodwill and
consumer recognition of the NESPRESSO brand and the Original NESPRESSO Capsule
Trade Dress.

88.     Plaintiffs worked feverishly for years to attempt to resolve this dispute without
burdening this Court. Despite Plaintiffs' efforts and intermittent indications by Defendant that an
amicable resolution may be possible, Defendant has refused to cease its unlawful activities. In
particular, to facilitate its ongoing infringement of the NESPRESSO Marks and the Original
NESPRESSO Capsule Trade Dress as it continued to offer and sell the Infringing Capsules,
Defendant filed a retaliatory challenge to SPN's '860 Application, which has already passed
substantive review by the United States Patent and Trademark Office for registration.

89.     Accordingly, to ameliorate the actual consumer confusion that Defendant has caused, is causing, and will likely continue to cause, as well as to remedy the harm that Plaintiffs have suffered because of Defendant's unlawful conduct, Plaintiffs bring this action for trademark infringement, trade-dress infringement, unfair competition, false endorsement, and false designation of origin under federal and New York law. Plaintiffs also seek an injunction, an accounting, disgorgement of Defendant's ill-gotten profits, and an award of Plaintiffs' damages, attorneys' fees, and costs.

## CLAIMS FOR RELIEF

### COUNT I
*(Federal Trademark Infringement Under 15 U.S.C. § 1114(1))*
*(Infringement of the NESPRESSO Marks)*

90.     Plaintiffs incorporate the allegations set forth in paragraphs 1-89 of the First Amended Complaint as though set forth fully herein.

91.     Count I is a claim for federal trademark infringement under 15 U.S.C. § 1114.

92.     SPN owns the NESPRESSO Marks in connection with the NESPRESSO Products.

93.     At all relevant times, Nespresso has had—and has—the right and license to use the NESPRESSO Marks in the United States in connection with the NESPRESSO Products.

94.     SPN's ownership in and to the NESPRESSO Marks predate any rights that Defendant could establish in and to any mark that consists of NESPRESSO in whole and/or in part.

95.     Nespresso's rights in and to the NESPRESSO Marks predate any rights that Defendant could establish in and to any mark that consists of NESPRESSO in whole and/or in part.

96.     The NESPRESSO Marks are arbitrary and/or fanciful and, therefore, are inherently distinctive.

97.     The NESPRESSO Marks identify Plaintiffs as the exclusive source of products offered under the NESPRESSO Marks and, therefore, have acquired distinctiveness.

98.     Defendant is reproducing and using the NESPRESSO Marks in their entirety to manufacture, distribute, advertise, market, promote, offer for sale, and/or sell Defendant's Infringing Capsule.

99.     Defendant's Infringing Capsule is nearly identical to, and creates the same overall commercial impression as, Plaintiffs' Original NESPRESSO Capsule.

100.    Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule are the same, namely: capsules containing coffee/espresso.

101.    Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule appeal to overlapping customer bases, namely: coffee/espresso drinkers.

102.    Consumers encounter Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule in overlapping and, in some instances, identical, trade channels.

103.    Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, for example, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about the source, origin, sponsorship, approval, endorsement, affiliation, association, and/or quality of Defendant's Infringing Capsule.

104.    Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for

sale, and/or sale of products (including, for example, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about the source, origin, sponsorship, approval, endorsement, affiliation, association, of Plaintiffs' Original NESPRESSO Capsule.

105.    In or about July 2018, Defendant's product packaging containing Defendant's Infringing Capsules displayed an attribution statement on the back of its packaging that NESPRESSO is a trademark of SPN, but did not include an express statement of non-affiliation that was prominent and proximate to any descriptive references to NESPRESSO.

106.    At this same time, in or about July 2018, Defendant displayed NESPRESSO prominently on the front of Defendant's Infringing Capsule product packaging to promote Defendant's Infringing Capsules, without use of a prominent or proximate disclaimer to such references to NESPRESSO such that consumers would recognize the disclaimer in the ordinary course of viewing and purchasing Defendant's Infringing Capsules.

107.    In or about 2021, Defendant re-designed its product packaging containing Defendant's Infringing Capsules to include a statement of non-affiliation, in small font, on the back of Defendant's product packaging where consumers are unlikely to view it.

108.    At this same time, in or about 2021, Defendant's re-designed product packaging containing Defendant's Infringing Capsules displayed NESPRESSO prominently on the front of the product packaging to promote Defendant's Infringing Capsules, yet Defendant failed to place a prominent and proximate disclaimer on the front of its product packaging such that consumers would recognize it in the ordinary course of viewing and purchasing Defendant's Infringing Capsules. Instead, Defendant included a disclaimer in small font on the back of the package where

consumers are unlikely to view it, and upon information and belief, do not view it, when making purchasing decisions.

109.    In or about July 2018, Defendant's website made prominent use of NESPRESSO to promote and sell Defendant's Infringing Capsules, yet Defendant's website failed to include an express statement of non-affiliation that was prominent and proximate to any descriptive references to NESPRESSO in connection with the offer and sale of Defendant's Infringing Capsules.

110.    Defendant's website also made prominent use of NESPRESSO to promote its Infringing Capsules, failed in many instances to use proper descriptive sentences to convey compatibility with Plaintiffs' products, and made use of "®" in connection with NESPRESSO. Such actions by Defendant, particularly in combination with the lack of prominent and proximate non-affiliation disclaimers, create the false impression that Defendant's Infringing Capsules are licensed by, affiliated with, endorsed by, or sponsored by Nespresso.

111.    Defendant's website continues to fail to include an express statement of non-affiliation that is prominent and proximate to any descriptive references to NESPRESSO in connection with the offer and sale of Defendant's Infringing Capsules.

112.    Defendant's use of the NESPRESSO Marks in such a manner and without display of a prominent and proximate non-affiliation was not and is not necessary to advertise Defendant's Infringing Capsule. Indeed, as evidenced by Defendant's own responses to consumer inquiries about Defendant's "Nespresso capsules" on social media whereby Defendant responded by referring to its capsules as "Espresso Capsules," Defendant's espresso pods may be readily identified without reference to NESPRESSO. Further, prominent and proximate non-affiliation disclaimers can easily be displayed.

113.    Defendant's use of the NESPRESSO Marks in such a manner and without display of a prominent and proximate non-affiliation was not and is not necessary to advertise Defendant's Infringing Capsule. Indeed, as evidenced by Defendant's own responses to consumer inquiries about Defendant's "Nespresso capsules" on social media whereby Defendant responded by referring to its capsules as "Espresso Capsules," Defendant's espresso pods may be readily identified without reference to NESPRESSO. Further, prominent and proximate non-affiliation disclaimers can easily be displayed.

114.    Plaintiffs have not consented to Defendant's use(s) of the NESPRESSO Marks for any purpose.

115.    Defendant had actual and constructive knowledge of Plaintiffs' superior rights in and to the NESPRESSO Marks prior to Defendant's adoption and use of the NESPRESSO Marks, and continues to use the NESPRESSO Marks with actual knowledge of its infringing conduct.

116.    Upon information and belief, Defendant copied, adopted, and/or uses the NESPRESSO Marks in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of NESPRESSO Products offered under the NESPRESSO Marks (including, without limitation, the Original NESPRESSO Capsule).

117.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the NESPRESSO Marks in interstate commerce, to which Defendant is not entitled at law or in equity.

118.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).

119.    Plaintiffs have suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

120.    Plaintiffs have no adequate remedy at law.

## COUNT II
*(Federal Trade-Dress Infringement Under 15 U.S.C. § 1125(a))*
*(Infringement of the Original NESPRESSO Capsule Trade Dress)*

121.    Plaintiffs incorporate the allegations set forth in paragraphs 1-120 of the First Amended Complaint as though set forth fully herein.

122.    Count II is a claim for federal trade-dress infringement under 15 U.S.C. § 1125(a).

123.    SPN is the applicant of record with the USPTO in and to the Original NESPRESSO Capsule Trade Dress in connection with the '860 Application.

124.    At all relevant times, Nespresso has had—and has—the right and license to use the Original NESPRESSO Capsule Trade Dress in the United States in connection with NESPRESSO Products (including, for example, the Original NESPRESSO Capsule).

125.    SPN's ownership in and to the Original NESPRESSO Capsule Trade Dress predate any rights that Defendant could establish in and to Defendant's Infringing Capsule Trade Dress.

126.    Nespresso's rights in and to the Original NESPRESSO Capsule Trade Dress predate any rights that Defendant could establish in and to Defendant's Infringing Capsule Trade Dress.

127.    The Original NESPRESSO Capsule Trade Dress is fanciful and/or arbitrary and, therefore, is inherently distinctive.

128.    The Original NESPRESSO Capsule Trade Dress identifies Plaintiffs as the exclusive source of products featuring the Original NESPRESSO Capsule Trade Dress and, therefore, has acquired distinctiveness.

45

129.    The Original NESPRESSO Capsule Trade Dress is non-functional.

130.    Defendant's Infringing Capsule Trade Dress constitutes a symbol or device within the meaning of 15 U.S.C. § 1125(a).

131.    Defendant's Infringing Capsule Trade Dress is nearly identical to, and creates the same overall commercial impression, as Plaintiffs' Original NESPRESSO Capsule Trade Dress.

132.    Products featuring Defendant's Infringing Capsule Trade Dress, and products featuring Nespresso's Original NESPRESSO Capsule Trade Dress, are the same, namely: capsules containing coffee/espresso.

133.    Products featuring Defendant's Infringing Capsule Trade Dress, and products featuring Nespresso's Original NESPRESSO Capsule Trade Dress, appeal to overlapping customer bases, namely: coffee/espresso drinkers.

134.    Consumers encounter products featuring Defendant's Infringing Capsule Trade Dress, and products featuring the Original NESPRESSO Capsule Trade Dress, in overlapping and, in some instances, identical trade channels.

135.    Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant is SPN or Nespresso, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of SPN and/or Nespresso and/or products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

136.     Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant and/or products featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule) are affiliated, connected, and/or associated with SPN, Nespresso and/or products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

137.     Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule) originates with, and/or is sponsored or approved by, and/or is offered under a license from, Plaintiffs or vice versa.

138.     Defendant has refused, and continues to refuse, to re-design the Infringing Capsule, which copies every element of the Original NESPRESSO Capsule Trade Dress.

139.     Plaintiffs have not consented to Defendant's use(s) of the Infringing Capsule Trade Dress for any purpose.

140.     Defendant had actual and constructive knowledge of Plaintiffs' superior rights in and to the Original NESPRESSO Capsule Trade Dress prior to Defendant's adoption and use of

the Infringing Capsule Trade Dress, and Defendant continues using its Infringing Capsule Trade Dress with actual knowledge of its infringing conduct.

141.    Upon information and belief, Defendant copied, adopted, and/or uses the Infringing Capsule Trade Dress in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of products featuring the Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

142.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Infringing Capsule Trade Dress in interstate commerce, to which Defendant is not entitled at law or in equity.

143.    Upon information and belief, Defendant's acts and conduct complained of herein constitute trade-dress infringement in violation of 15 U.S.C. § 1125(a).

144.    Plaintiffs' have suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

145.    Plaintiffs have no adequate remedy at law.

### COUNT III
*(Federal Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under 15 U.S.C. § 1125(a))*
*(Use of the NESPRESSO Marks)*

146.    Plaintiffs incorporate the allegations set forth in paragraphs 1–145 of the First Amended Complaint as though set forth fully herein.

147.    Count III is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

148.    SPN owns the NESPRESSO Marks in connection with the NESPRESSO Products.

149.    At all relevant times, Nespresso has had—and has—the right and license to use the NESPRESSO Marks in the United States in connection with the NESPRESSO Products.

150.    SPN's ownership in and to the NESPRESSO Marks predate any rights that Defendant could establish in and to any mark that consists of NESPRESSO in whole and/or in part.

151.    Nespresso's rights in and to the NESPRESSO Marks predate any rights that Defendant could establish in and to any mark that consists of NESPRESSO in whole and/or in part.

152.    The NESPRESSO Marks are arbitrary and/or fanciful and, therefore, are inherently distinctive.

153.    The NESPRESSO Marks identify Plaintiffs as the exclusive source of products offered under the NESPRESSO Marks and, therefore, have acquired distinctiveness.

154.    Defendant is reproducing and using the NESPRESSO Marks in their entirety to manufacture, distribute, advertise, market, promote, offer for sale, and/or sell Defendant's Infringing Capsule.

155.    Defendant's Infringing Capsule is nearly identical to, and creates the same overall commercial impression as, Plaintiffs' Original NESPRESSO Capsule.

156.    Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule are the same, namely: capsules containing coffee/espresso.

157.    Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule appeal to overlapping customer bases, namely: coffee/espresso drinkers.

158.    Consumers encounter Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule in overlapping and, in some instances, identical trade channels.

159.    Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's Infringing Capsule is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant is SPN or Nespresso, and/or that Defendant is a licensee, authorized distributor, and/or affiliate of SPN or Nespresso and/or Plaintiffs' Original NESPRESSO Capsule.

160.    Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's Infringing Capsule is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's Infringing Capsule are affiliated, connected, and/or associated with Plaintiffs and/or Plaintiffs' Original NESPRESSO Capsule.

161.    Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's Infringing Capsule is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant's Infringing Capsules originate with, and/or are sponsored or approved by, and/or offered under a license from, Plaintiffs or vice versa.

162.    In or about July 2018, Defendant's product packaging containing Defendant's Infringing Capsules displayed an attribution statement on the back of its packaging that NESPRESSO is a trademark of SPN, but did not include an express statement of non-affiliation that was prominent and proximate to any descriptive references to NESPRESSO.

163.   At this same time, in or about July 2018, Defendant displayed NESPRESSO prominently on the front of Defendant's Infringing Capsule product packaging to promote Defendant's Infringing Capsules, without use of a prominent or proximate disclaimer to such references to NESPRESSO such that consumers would recognize the disclaimer in the ordinary course of viewing and purchasing Defendant's Infringing Capsules.

164.   In or about 2021, Defendant re-designed its product packaging containing Defendant's Infringing Capsules to include a statement of non-affiliation, in small font, on the back of Defendant's product packaging where consumers are unlikely to view it.

165.   At this same time, in or about 2021, Defendant's re-designed product packaging containing Defendant's Infringing Capsules displayed NESPRESSO prominently on the front of the product packaging to promote Defendant's Infringing Capsules, yet Defendant failed to place a prominent and proximate disclaimer on the front of its product packaging such that consumers would recognize it in the ordinary course of viewing and purchasing Defendant's Infringing Capsules. Instead, Defendant included a disclaimer in small font on the back of the package where consumers are unlikely to view it, and upon information and belief, do not view it, when making purchasing decisions.

166.   In or about July 2018, Defendant's website made prominent use of NESPRESSO to promote and sell Defendant's Infringing Capsules, yet Defendant's website failed to include an express statement of non-affiliation that was prominent and proximate to any descriptive references to NESPRESSO in connection with the offer and sale of Defendant's Infringing Capsules.

167.   Defendant's website also made prominent use of NESPRESSO to promote its Infringing Capsules, failed in many instances to use proper descriptive sentences to convey

compatibility with Plaintiffs' products, and made use of "®" in connection with NESPRESSO. Such actions by Defendant, particularly in combination with the lack of prominent and proximate non-affiliation disclaimers, create the false impression that Defendant's Infringing Capsules are licensed by, affiliated with, endorsed by, or sponsored by, Plaintiffs.

168.    Defendant's website continues to fail to include an express statement of non-affiliation that is prominent and proximate to any descriptive references to NESPRESSO in connection with the offer and sale of Defendant's Infringing Capsules.

169.    Defendant's use of the NESPRESSO Marks in such a manner and without display of a prominent and proximate non-affiliation was not and is not necessary to advertise Defendant's Infringing Capsule. Indeed, as evidenced by Defendant's own responses to consumer inquiries about Defendant's "Nespresso capsules" on social media whereby Defendant responded by referring to its capsules as "Espresso Capsules," Defendant's espresso pods may be readily identified without reference to NESPRESSO. Further, prominent and proximate non-affiliation disclaimers can easily be displayed.

170.    SPN has not consented to Defendant's use(s) of the NESPRESSO Marks for any purpose.

171.    Nespresso has not consented to Defendant's use(s) of the NESPRESSO Marks for any purpose.

172.    Defendant had actual and constructive knowledge of Plaintiffs' superior rights in and to the NESPRESSO Marks prior to Defendant's adoption and use of the NESPRESSO Marks, and Defendant continues using the NESPRESSO Marks with actual knowledge of its infringing conduct.

173.   Upon information and belief, Defendant copied, adopted, and/or uses the NESPRESSO Marks in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of NESPRESSO Products offered under the NESPRESSO Marks (including, without limitation, the Original NESPRESSO Capsule).

174.   Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the NESPRESSO Marks in interstate commerce, to which Defendant is not entitled at law or in equity.

175.   Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

176.   Plaintiffs have suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

177.   Plaintiffs have no adequate remedy at law.

### COUNT IV
*(Federal Unfair Competition, False Endorsement, False Association, and False Designation of Origin Under 15 U.S.C. § 1125(a))*
*(Use of Defendant's Infringing Capsule Trade Dress)*

178.   Plaintiffs incorporate the allegations set forth in paragraphs 1-177 of the First Amended Complaint as though set forth fully herein.

179.   Count IV is a claim for federal unfair competition, false endorsement, false association, and false designation of origin under 15 U.S.C. § 1125(a).

180.   SPN owns the Original NESPRESSO Capsule Trade Dress in connection with the NESPRESSO Products (including, for example, the Original NESPRESSO Capsule).

181.    At all relevant times, Nespresso has had—and has—the right and license to use the Original NESPRESSO Capsule Trade Dress in the United States in connection with NESPRESSO Products (including, for example, the Original NESPRESSO Capsule).

182.    SPN's ownership in and to the Original NESPRESSO Capsule Trade Dress predates any rights that Defendant could establish in and to Defendant's Infringing Trade Dress.

183.    Nespresso's rights in and to the Original NESPRESSO Capsule Trade Dress predate any rights that Defendant could establish in and to Defendant's Infringing Trade Dress.

184.    The Original NESPRESSO Capsule Trade Dress is fanciful and/or arbitrary and, therefore, is inherently distinctive.

185.    The Original NESPRESSO Capsule Trade Dress identifies Plaintiffs as the exclusive source of products featuring the Original NESPRESSO Capsule Trade Dress and, therefore, has acquired distinctiveness.

186.    The Original NESPRESSO Capsule Trade Dress is non-functional.

187.    Defendant's Infringing Capsule Trade Dress constitutes a symbol or device within the meaning of 15 U.S.C. § 1125(a).

188.    Defendant's Infringing Capsule Trade Dress is nearly identical to, and creates the same overall commercial impression, as Plaintiffs' Original NESPRESSO Capsule Trade Dress.

189.    Products featuring Defendant's Infringing Capsule Trade Dress, and products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress, are the same, namely: capsules containing coffee/espresso.

190.    Products featuring Defendant's Infringing Capsule Trade Dress, and products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress, appeal to overlapping customer bases, namely: coffee/espresso drinkers.

191.   Consumers encounter products featuring Defendant's Infringing Capsule Trade Dress, and products featuring the Original NESPRESSO Capsule Trade Dress, in overlapping and, in some instances, identical trade channels.

192.   Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant is SPN or Nespresso, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of SPN or Nespresso and/or products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

193.   Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant and/or products featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule) are affiliated, connected, and/or associated with SPN or Nespresso and/or products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

194.   Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing

Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether products featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule) originate with, and/or are sponsored or approved by, and/or offered under a license from, Plaintiffs or vice versa.

195.    Defendant has refused, and continues to refuse, to re-design the Infringing Capsule, which copies every element of the Original NESPRESSO Capsule Trade Dress.

196.    SPN has not consented to Defendant's use(s) of the Infringing Capsule Trade Dress for any purpose.

197.    Nespresso has not consented to Defendant's use(s) of the Infringing Capsule Trade Dress for any purpose.

198.    Defendant had actual and constructive knowledge of Plaintiffs' superior rights in and to the Original NESPRESSO Capsule Trade Dress prior to Defendant's adoption and use of the Infringing Capsule Trade Dress, and Defendant continues using its Infringing Capsule Trade Dress with actual knowledge of its infringing conduct.

199.    Upon information and belief, Defendant copied, adopted, and/or uses the Infringing Capsule Trade Dress in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of NESPRESSO Products featuring the Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

200.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Infringing Capsule Trade Dress in interstate commerce, to which Defendant is not entitled at law or in equity.

201.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition, false endorsement, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a).

202.    Nespresso has suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

203.    Plaintiffs have no adequate remedy at law.

**COUNT V**
*(Unfair Competition and Passing Off Under New York Common Law)*
*(Use of the NESPRESSO Marks)*

204.    Plaintiffs incorporate the allegations set forth in paragraphs 1-203 of the First Amended Complaint as though set forth fully herein.

205.    Count V is a claim for unfair competition and passing off under New York common law.

206.    SPN owns the NESPRESSO Marks in connection with the NESPRESSO Products.

207.    At all relevant times, Nespresso has had—and has—the right and license to use the NESPRESSO Marks in the United States in connection with the NESPRESSO Products.

208.    SPN's ownership in and to the NESPRESSO Marks predate any rights that Defendant could establish in and to any mark that consists of NESPRESSO in whole and/or in part.

209.    Nespresso's rights in and to the NESPRESSO Marks predate any rights that Defendant could establish in and to any marks that consist of NESPRESSO in whole and/or in part.

210.    The NESPRESSO Marks are arbitrary and/or fanciful and, therefore, are inherently distinctive.

211.   The NESPRESSO Marks identify Plaintiffs as the exclusive source of products offered under the NESPRESSO Marks and, therefore, have acquired distinctiveness.

212.   Defendant is reproducing and using the NESPRESSO Marks in their entirety to manufacture, distribute, advertise, market, promote, offer for sale, and/or sell Defendant's Infringing Capsule.

213.   Defendant's Infringing Capsule is nearly identical to, and creates the same overall commercial impression as, Plaintiffs' Original NESPRESSO Capsule.

214.   Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule are the same, namely: capsules containing coffee/espresso.

215.   Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule appeals to overlapping customer bases, namely, coffee/espresso drinkers.

216.   Consumers encounter Defendant's Infringing Capsule and Plaintiffs' Original NESPRESSO Capsule in overlapping and, in some instances, identical, trade channels.

217.   Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's Infringing Capsule is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant is SPN or Nespresso, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of SPN or Nespresso and/or Plaintiffs' Original NESPRESSO Capsule.

218.   Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's Infringing Capsule is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant and/or Defendant's

Infringing Capsule are affiliated, connected, and/or associated with SPN or Nespresso and/or Plaintiffs' Original NESPRESSO Capsule.

219.    Defendant's use of the NESPRESSO Marks in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of Defendant's Infringing Capsule is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant's Infringing Capsules originate with, and/or are sponsored or approved by, and/or offered under a license from, Plaintiffs or vice versa.

220.    SPN has not consented to Defendant's use(s) of the NESPRESSO Marks for any purpose.

221.    Nespresso has not consented to Defendant's use(s) of the NESPRESSO Marks for any purpose.

222.    Defendant had actual and constructive knowledge of Plaintiffs' superior rights in and to the NESPRESSO Marks prior to Defendant's adoption and use of such Marks, and Defendant continues using the NESPRESSO Marks with actual knowledge of its infringing conduct.

223.    Upon information and belief, Defendant copied, adopted, and/or uses the NESPRESSO Marks in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of NESPRESSO Products offered under the NESPRESSO Marks (including, without limitation, the Original NESPRESSO Capsule).

224.     Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the NESPRESSO Marks in interstate commerce, to which Defendant is not entitled at law or in equity.

225.     Upon information and belief, Defendant's acts and conduct complained of herein constitutes unfair competition and passing off in violation of New York common law.

226.     Plaintiffs have suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

227.     Plaintiffs have no adequate remedy at law.

**COUNT VI**
*(Unfair Competition and Passing Off Under New York Common Law)*
*(Use of Defendant's Infringing Capsule Trade Dress)*

228.     Plaintiffs incorporate the allegations set forth in paragraphs 1-227 of the First Amended Complaint as though set forth fully herein.

229.     Count VI is a claim for unfair competition and passing off under New York common law.

230.     SPN owns the Original NESPRESSO Capsule Trade Dress in connection with the NESPRESSO Products (including, for example, the Original NESPRESSO Capsule).

231.     At all relevant times, Nespresso has had—and has—the right and license to use the Original NESPRESSO Capsule Trade Dress in the United States in connection with NESPRESSO Products (including, for example, the Original NESPRESSO Capsule).

232.     SPN's ownership in and to the Original NESPRESSO Capsule Trade Dress predates any rights that Defendant could establish in and to Defendant's Infringing Trade Dress.

233.     Nespresso's rights in and to the Original NESPRESSO Capsule Trade Dress predate any rights that Defendant could establish in and to Defendant's Infringing Trade Dress.

234.   The Original NESPRESSO Capsule Trade Dress is fanciful and/or arbitrary and, therefore, is inherently distinctive.

235.   The Original NESPRESSO Capsule Trade Dress identifies Plaintiffs as the exclusive source of products featuring the Original NESPRESSO Capsule Trade Dress and, therefore, has acquired distinctiveness.

236.   The Original NESPRESSO Capsule Trade Dress is non-functional.

237.   Defendant's Infringing Capsule Trade Dress is nearly identical to, and creates the same overall commercial impression as, Plaintiffs' Original NESPRESSO Capsule Trade Dress.

238.   Products featuring Defendant's Infringing Capsule Trade Dress, and products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress, are the same, namely: capsules containing coffee/espresso.

239.   Products featuring Defendant's Infringing Capsule Trade Dress, and products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress, appeal to overlapping customer bases, namely: coffee/espresso drinkers.

240.   Consumers encounter products featuring Defendant's Infringing Capsule Trade Dress, and products featuring the Original NESPRESSO Capsule Trade Dress, in overlapping and, in some instances, identical, trade channels.

241.   Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant is SPN or Nespresso, and/or whether Defendant is a licensee, authorized distributor, and/or affiliate of SPN or Nespresso and/or products featuring Plaintiffs'

Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

242.    Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether Defendant and/or products featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule) are affiliated, connected, and/or associated with SPN or Nespresso and/or products featuring Plaintiffs' Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

243.    Defendant's use of the Infringing Capsule Trade Dress in interstate commerce on, for, and/or in connection with the manufacturing, distribution, advertising, marketing, promotion, offering for sale, and/or sale of products (including, without limitation, Defendant's Infringing Capsule) is causing and is likely to continue causing consumer confusion, mistake, and/or deception about whether products featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule) originate with, and/or are sponsored or approved by, and/or offered under a license from, Plaintiffs or vice versa.

244.    Defendant has refused, and continues to refuse, to re-design the Infringing Capsule, which copies every element of the Original NESPRESSO Capsule Trade Dress.

245.    SPN has not consented to Defendant's use(s) of the Infringing Capsule Trade Dress for any purpose.

246.    Nespresso has not consented to Defendant's use(s) of the Infringing Capsule Trade Dress for any purpose.

247.    Defendant had actual and constructive knowledge of Plaintiffs' superior rights in and to the Original NESPRESSO Capsule Trade Dress prior to Defendant's adoption and use of the Infringing Capsule Trade Dress, and Defendant continues using its Infringing Capsule Trade Dress with actual knowledge of its infringing conduct.

248.    Upon information and belief, Defendant copied, adopted, and/or uses the Infringing Capsule Trade Dress in interstate commerce in furtherance of Defendant's willful, deliberate, and bad faith scheme to trade upon the extensive consumer goodwill, reputation, and commercial success of NESPRESSO Products featuring the Original NESPRESSO Capsule Trade Dress (including, without limitation, the Original NESPRESSO Capsule).

249.    Upon information and belief, Defendant has made, and will continue to make, substantial profits and gain from its use of the Infringing Capsule Trade Dress in interstate commerce, to which Defendant is not entitled at law or in equity.

250.    Upon information and belief, Defendant's acts and conduct complained of herein constitute unfair competition and passing off in violation of New York common law.

251.    Plaintiffs have suffered, and will continue to suffer, irreparable harm from Defendant's acts and conduct complained of herein, unless restrained by law.

252.    Plaintiffs have no adequate remedy at law.

## **PRAYER FOR RELIEF**

**WHEREFORE**, based on the unlawful acts of Defendant, as alleged herein, Plaintiffs SPN and Nespresso pray that the Court enter a judgment against Defendant:

(a) Pursuant to 15 U.S.C. § 1116(a), preliminarily and permanently enjoining Defendant, its agents, servants, employees, officers and all persons in active concert and participation with them:

    i.    From using the NESPRESSO Marks (or any other mark(s) confusingly similar thereto) on and/or in connection with the manufacture, distribution, advertising, marketing, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Defendant's Infringing Capsule;

    ii.    From using the NESPRESSO Marks (or any other mark(s) confusingly similar thereto) on and/or in connection with the manufacture, distribution, advertising, marketing, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Defendant's Infringing Capsule in such a way that falsely conveys the false impression that Defendant's Infringing Capsules are licensed by, affiliated with, endorsed by, or sponsored by, SPN or Nespresso;

    iii.    From using the Original NESPRESSO Capsule Trade Dress or any trade dress confusingly similar thereto (including, without limitation, Defendant's Infringing Capsule Trade Dress) in connection with the manufacture, distribution, advertising, marketing, promoting, offering for sale, and/or sale of any goods or services, including, without limitation, Defendant's Infringing Capsule;

    iv.    From using any logo, trade name or trademark that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of Defendant (including, without limitation, Defendant's Infringing Capsule) are licensed NESPRESSO-brand products, are sponsored by,

authorized by or in any way associated with Plaintiffs SPN or Nespresso, the Nespresso brand, and/or any of the NESPRESSO Products (including, without limitation, the Original NESPRESSO Capsule);

v.   From infringing Plaintiffs' trademarks and trade dress; or

vi.   From falsely representing itself as being connected with, sponsored by or associated with Plaintiff SPN, Plaintiff Nespresso or the NESPRESSO brand.

(b) Pursuant to 15 U.S.C. § 1116(a), ordering Defendant to file with the Court and serve upon Plaintiffs' counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which Defendant has complied with the injunction.

(c) Pursuant to 15 U.S.C. § 1118, ordering the destruction of all unauthorized goods and materials bearing any copy or colorable imitation of the NESPRESSO Marks, and/or Original NESPRESSO Capsule Trade Dress.

(d) Finding that, by the acts complained of above, Defendant has infringed SPN's federally registered NESPRESSO Marks, which are licensed to Nespresso, in violation of 15 U.S.C. § 1114.

(e) Finding that, by the acts complained of above, Defendant has infringed SPN and Nespresso's Original NESPRESSO Capsule Trade Dress in violation of 15 U.S.C. § 1125(a)(1)(A).

(f) Finding that, by the acts complained of above, Defendant has engaged in unfair competition, false designation of origin, false association, and/or false endorsement in violation of 15 U.S.C. § 1125(a)(1)(A).

(g) Finding that, by the acts complained of above, Defendant has engaged in unfair competition and passing off in violation of New York common law.

(h) Finding that the acts complained of above constitute willful infringement of the NESPRESSO Marks, and the Original NESPRESSO Capsule Trade Dress.

(i) Finding that Defendant's acts complained of above render this case "exceptional" within the meaning of 15 U.S.C. § 1117.

(j) Ordering Defendant to provide Plaintiffs with a full accounting of all manufacture, distribution and sale of products under the NESPRESSO Marks (including, without limitation, Defendant's Infringing Capsule), including all profits derived therefrom.

(k) Ordering Defendant to provide Plaintiffs with a full accounting of all manufacture, distribution, and sale of products featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule), including all profits derived therefrom.

(l) Ordering Defendant to pay Plaintiffs:

    i. Defendant's profits for sale of the infringing goods offered under the NESPRESSO Marks (including, without limitation, Defendant's Infringing Capsule);

    ii. Defendant's profits for sale of the infringing goods featuring Defendant's Infringing Capsule Trade Dress (including, without limitation, Defendant's Infringing Capsule);

    iii. Treble actual damages in connection with Defendant's infringement of the NESPRESSO Marks; and

    iv. Plaintiffs' costs and reasonable attorneys' fees incurred in this matter.

(m) Awarding Plaintiffs pre-judgment and post-judgment interest against Defendant.

(n) Awarding Plaintiffs such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

Plaintiffs request a trial by jury for all issues so triable pursuant to FED. R. CIV. P. 38(b)

and 38(c).

Dated: February 7, 2023
       New York, New York                   Respectfully submitted,

                                          MAYER BROWN LLP

                                          A. John P. Mancini
                                          Jonathan W. Thomas
                                          Gina M. Parlovecchio
                                          Daniel M. Rosales
                                          1221 Avenue of the Americas
                                          New York, New York 10020-1001
                                          Tel.: (212) 506 2500
                                          Fax: (212) 262 1910
                                          Email: JMancini@mayerbrown.com
                                          Email: JWThomas@mayerbrown.com
                                          Email: GParlovecchio@mayerbrown.com
                                          Email: DRosales@mayerbrown.com

                                          Kristine M. Young *pro hac vice*
                                          71 South Wacker Drive
                                          Chicago, Illinois 60606
                                          Tel.: (312) 782-0600
                                          Email: KYoung@mayerbrown.com

                                          *Attorneys for Plaintiffs Nespresso USA, Inc.*
                                          *and Société des Produits Nestlé S.A.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on February 7, 2023 he caused a true and correct copy of the foregoing *Plaintiffs Nespresso USA, Inc. and Société des Produits Nestlé S.A.'s First Amended Complaint*, to be filed using this Court's Electronic Case Filing system, which will transmit an electronic notice and copy of such filing to all counsel of record in this case, and served a courtesy copy via electronic mail, on Defendant Peet's Coffee, Inc.'s counsel of record, at:

Douglas R. Nemec
Douglas.Nemec@skadden.com
Jordan A. Feirman
Jordan.Feirman@skadden.com
David M. Lamb
David.Lamb@skadden.com
Anthony P. Biondo
Anthony.Biondo@skadden.com
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000 (telephone)
(212) 735-2000 (facsimile)

By:_____
Daniel M. Rosales
*Attorney for Plaintiffs Nespresso USA, Inc. and Société des Produits Nestlé S.A.*